ADAMS COUNTY, MISS., BOARD OF EDUCATION *v.* STATE
EDUCATIONAL FINANCE COMM. OF MISS.

No. 40375 December 17, 1956 91 So. 2d 524

229

*Wm. F. Riley, Brandon, Brandon, Hornsby & Handy,* Natchez, for appellant.

*Jas. T. Kendall,* Jackson, for appellee.

229

KYLE, J.

This case is before us on appeal by the Board of Education of Adams County from a decree of the Chancery Court of that county affirming an order of the State Educatianal Finance Commission disallowing and disapproving an order of the county board of education proposing to reorganize and consolidate the school districts of the county under authority of Section 1 of Chapter 12, Laws of Mississippi, Extraordinary Session of 1953, by incorporating all of the territory of the county lying outside of the corporate limits of the City of Natchez into one school district.

This appeal is authorized by Section 12 (c) of Chapter 11, Laws of Mississippi, Extraordinary Session of 1953.

The statutes requiring consideration by us on this appeal are parts of the school laws enacted by the Legislature at its 1953 Extraordinary Session, providing for the consolidation or reorganization of school districts, the establishment of a minimum program of education for all the children legally enrolled in the public schools of the state, and providing for the establishment of a program of state aid for the construction of school buildings and other school facilities, to be administred by the State Educational Finance Commission.

The two sections of the statutes with which we are primarily concerned on this appeal are Sections 1 and 2 of Chapter 12, Laws of Mississippi, Extraordinary Session of 1953.

Section 1 of Chapter 12 provides for the abolition of all school districts in the state which were in existence upon the effective date of the act. And Section 1 then provides that, ''As soon as practicable after the

passage of this act, and in no event later than July 1, 1957, the county board of education of each county, pursuant to a survey of such county for the purpose of determining the educational needs of the county from the standpoint of the efficiency of operating schools and school districts, shall, by an order spread upon its minutes, consolidate the territory of the county in such school districts or reconstitute existing school districts so that all of the territory of such county shall then be included within such school districts as the county board of education shall deem necessary to promote the physical, mental, moral, social and educational welfare of the children involved, the efficiency of the operation of the schools, and the economic and social welfare of the various school areas." It is further provided that a certified copy of the order shall be forthwith transmitted to the State Educational Finance Commission, created by House Bill No. 2 (Ch. 11), Laws of Extraordinary Session of 1953, for consideration by the Commission; and that, "Such order shall be considered by said Commission from the standpoint of whether same promotes the physical, mental, moral, social and educational welfare of the children involved, the efficiency of the operation of the school system of the county, and the economic and social welfare of the various school areas of the county, and shall be approved or disapproved by said Commission." Section 1 of the act then provides that, if the order shall be disapproved by the Commission, it shall be returned to the proper county board of education with a statement of the reasons for such disapproval and for amendment in accordance therewith; and if the county board of education shall not concur, in whole or in part, with the reasons stated for disapproval by the Commission, it shall resubmit its order or modified order, supported by such documentary evidence as may be prescribed by the rules or regulations of the Commission and by such additional documentary evidence as may

be deemed appropriate by the board. It is further provided that if the Commission shall not approve the resubmitted order or modified order, it shall thereupon docket the controversy for public hearing upon not less than five (5) days notice to the county board of education, and that at said hearing, ''the secretary of the Commission shall cause to be recorded all oral proof made and all rulings or orders made or entered, and shall preserve such additional evidence as may be introduced at said hearing, all of which shall be made available for the record in the event of an appeal from the order entered by the Commission after said hearing.'' And finally, it is expressly provided that, ''No such order shall be effective until finally approved by the Commission and no school district shall be eligible for any grant of funds from the state public school building fund until the consolidation or reconstitution of same shall have been approved by the Commission as herein provided.''

Section 2 of Chapter 12 makes similar provisions for the reconstitution of municipal separate school districts; and where any municipal separate school district is reconstituted or created, as provided in said section, the order of the county board of education referred to in the preceding section shall embrace only the territory of the county which lies outside of the boundaries of the municipal separate school district or districts. Section 2 further provides that all applications for the reconstitution of municipal separate school districts shall be submitted to the State Educational Finance Commission at the same time the plan for the reorganization or reconstitution of school districts is submitted to the Commission by the county board of education of the county or counties in which such municipal separate school district is located, and the application of such municipal separate school district shall be considered by the State Educational Finance Commission in connection with the plan for reconstitution or reorganization of districts

submitted by the county board or boards of education, and from the standpoint of whether or not the overall plan for the entire county or counties best promotes the educational interest thereof.

The record in this case shows that, pursuant to the provisions of the above mentioned Sections 1 and 2 of Chapter 12, a survey was made of Adams County and the Natchez Municipal Separate School District, under the auspices of the county board of education and the Board of Trustees of the Natchez Municipal Separate School District, by a survey team from Mississippi Southern College, under the direction of Dr. Ralph S. Owens, of the Department of Education Administration, and Dr. Raymond M. Ainsley, Director of Educational Research.

The report filed by Dr. Owens and his associates showed that Adams County had a population, according to the 1950 census, of 32,247. The population of the City of Natchez, which constituted a municipal separate school district, without added territory, was 22,740, and of the county outside the City of Natchez, 9,507. The total enrollment in the white schools of the county, outside the City of Natchez, during the 1954-55 Session, was 844. The total enrollment in the Negro schools, outside the City of Natchez, was 1368. The enrollment in the white schools of the city was 2774, and in the Negro schools, 2014.

There were only three white schools in the county outside the City of Natchez, at the time the survey was made, namely, the Kingston Consolidated School, which had an enrollment of 42; the Pine Ridge Consolidated School, which had an enrollment of 114; and the Washington Consolidated School, which had an enrollment of 723. The Washington Consolidated School maintained a high school department, grades 9 to 12, inclusive, with an enrollment of 136 high school students. There were 31 Negro schools in the county, outside the City of Natchez. None of the Negro schools maintained a high

school department. The Negro high school students living outside the city attended the Sadie V. Thompson High School in the City of Natchez. The number of Negro high school students from the county enrolled in the Natchez High School, grades 9 to 12, was 179. The total number of Negro children from the county enrolled in the city schools, grades 1 to 12, was 315.

The report showed that the Washington Consolidated School building, constructed in 1951 and located only a few miles east of the City of Natchez, and the Central Elementary Negro School building, constructed in 1953 -and having six classrooms and a principal's office, were substantial brick buildings in excellent condition. All of the school buildings in the City of Natchez were in good condition. The Natchez High School building for white children, constructed in 1927, was valued at $568,-000 at the time the school survey was made. The Sadie V. Thompson School building for Negroes was a new building constructed in 1953 at a cost of $678,600 and housed grades 4 through 12. There were 11½ elementary teachers and 21 high school teachers employed in the school. The enrollment during the 1954-55 school session was 930, and of that number 213 came from outside the city. The latter number included high school students, grades 9 through 12.

In the report filed by the survey team, it was recommended that the school districts of Adams County be reconstituted, so as to provide for two school districts, one to include the territory embraced within the corporate limits of the City of Natchez, and the other to include all of the territory of the county lying outside the corporate limits of the City of Natchez.

The two-unit plan called for a building program for the white schools in the county, which would include a new county high school building to be located at Washington, estimated cost, $565, 000; an addition to the existing Washington Consolidated School building, to be used as

a junior high school building, estimated cost, $468,000; a new elementary school building to be located south of the City of Natchez, estimated cost, $376,000—making a total cost of $1,409,000. The two-unit plan called for a building program for Negro schools in the county, which would include a county high school building to be located on the Central Elementary School site, estimated cost, $504,000; an addition to the Central Elementary School, estimated cost, $234,000; a new elementary school to be located north of the City of Natchez, estimated cost, $424,500; and a new elementary school to be located south of the City of Natchez, estimated cost, $366,000,—making a total cost of $1,528,500. The total estimated cost of construction of county schools under the two-unit plan was $2,937,500.

The two-unit plan called for a building program for the Natchez Municipal Separate School District which would include the construction of a white elementary school at a cost of $498,000, and a Negro elementary school at a cost of $498,000, making a total cost of $996,-000 for the separate school district.

In a supplemental report, which was annexed to the report mentioned above, consideration was given to the relative cost of a one-unit system for the entire county, including the City of Natchez, as compared with the cost of the two-unit system outlined in the original report. In this supplemental report it was suggested that, if a one-unit system should be adopted, the city administrative unit should absorb the county unit; that a senior high school building for the white children from the city and county should be erected in the city, and the present senior high school building should be converted into a junior high school building, serving both city and county; and that an elementary school building for white children should be erected south of the city for grades 1 to 6; that all Negro children, city and county, in grades 7 to 12, inclusive, should attend the Sadie V. Thompson

School in the City of Natchez; that a Negro elementary school of 16 classrooms should be constructed on a site in the northern part of the city; that eight classrooms should be added to the Central Elementary School; and that two new elementary schools should be constructed, one consisting of 14 classrooms to be located north of the city, and the other consisting of 12 classrooms to be located south of the city.

It was stated that under the single unit plan three buidings recommended in the two-unit plan would be eliminated, namely, the proposed new Washington High School building for whites, the new elementary school building for whites in the City of Natchez, and the proposed new high school building for Negroes to be located on the Central Elementary School site. One additional building not called for in the two-unit plan would be required, a new senior high school building for whites, the estimated cost of which would be 860,000.

Pursuant to the recommendations made in the original report for a two-unit system, one for the county and one for the Natchez Municipal Separate School District, the county board of education, on April 4, 1953, adopted a resolution and order providing that all of the territory of the county situated outside of the corporate limits of the City of Natchez be consolidated into one school district to be known as the Adams County School District, subject to the approval of the State Educational Finance Commission, and that such order should become effective immediately upon the approval of the plan by the State Commission. The Board of Trustees of the Natchez Municipal Separate School District in like manner, on April 6, 1955, adopted a resolution and order providing that all the territory within the corporate limits of the City of Natchez be declared to be one single school district to be known as "The Municipal Separate School District of the City of Natchez," subject to the approval of the State Educational Finance

Commission. Both resolutions or orders were published in the Natchez Democrat on April 8, 1955.

Certified copies of the orders of the county board of education and the board of trustees of the municipal separate school district were immediately filed with the State Educational Finance Commission, along with petitions asking for approval of the orders by the State Commission. The orders were found to be defective, in that they failed to show a legal description of the territory lying within the corporate limits of the City of Natchez; and new or amended orders were called for. The new or amended orders were adopted and filed with the Commission, and on May 16, 1955, the Commission set the matters for a public hearing on May 30, 1955. The hearing was duly held on that date, and after due consideration of the two petitions, the Commission, by orders duly adopted and entered upon its minutes, disapproved and disallowed both petitions, and directed that the petitions, together with the exhibits attached thereto, be returned to the respective boards.

In its orders disapproving the above mentioned orders of the county board of education and the board of trustees of the municipal separate school district, the Commission made the following findings of facts: (1) That a one-unit system embracing the territory of the entire county, including that within the City of Natchez, would result in a saving of more than $701,900, in construction costs alone, and there would be corresponding and proportionate savings in other areas of operation of the school system; (2) that a one-unit system embracing the territory of the entire county, including that within the City of Natchez, could best be used to equalize facilities and provide adequate educational opportunities and advantages for all of the children of the county and the city; (3) that the physical, mental, moral, social, and educational welfare of the children of the county and the city would be best served and promoted, and the efficiency of

operation of the school system of the county and the economic and social welfare of the various school areas of the county would be best served by the formation of one school district in the county, the same to include all the territory of the county and the territory within the corporate limits of the City of Natchez; and (4) that in order to promote efficiency in the operation of the school system of the city and the county and to serve the best interest of the school children of the city and county, the Natchez Municipal Separate School District should be extended to include all of the territory of the county as well as the territory within the corporate limits of the city.

After the disapproval of the two-unit plan by the State Commission, a restudy of certain aspects of the county and the city school systems was made by Dr. Owens and the members of his staff, and during the month of September 1955 a second supplemental report was filed with the county board of education and the board of trustees of the municipal separate school district.

In that report it was pointed out that, if a one-unit plan were adopted, providing for a municipal separate school district for the entire county, the state would contribute $159,722 less each year for the support of the school system than under a two-unit plan. This would be due to the fact that the state guarantee of 40 per cent of the total cost of the minimum program of education, provided for in Section 4 (a) of Chapter 14, Laws of Mississippi, Extraordinary Session, 1953, would not be applicable.

It was also pointed out, however, that there would be a very great increase in the cost of the minimum foundation program as teachers were employed in the county schools who possessed the same high qualifications as the teachers employed in the city schools; and this would be especially true as better qualified Negro

teachers were employed in the Negro schools. And it was the opinion of Dr. Owens that within a short time there would be no loss of state aid under the minimum foundation program, even though the county might lose temporarily the benefit of the 40 per cent guarantee contained in Section 4 (a) of the above mentioned Chapter 14. It was also pointed out that there were many people residing outside the city limits who had been accustomed to having their children attend the city schools; and it would be difficult to operate two units, one for the city and one for the county, without "disaffection".

On September 22, 1955, the Board of Trustees of the Natchez Municipal Separate School District addressed a letter to the county board of education in which the trustees stated that they intended to abide by the decision of the State Commission; and in their letter the trustees requested that the county board of education join with them in a petition to the State Commission for the establishment of a municipal separate school district which would include all of the territory of Adams County. The county board of education, however, rejected the suggestion, and a few days later filed with the State Commission a petition expressing its dissatisfaction with the decision of the Commission and requesting a public hearing, in accordance with the provisions of the statute. The State Commission thereupon scheduled a hearing for October 27, 1955, and the hearing was duly held on that date.

Dr. Ralph S. Owens was called to testify as a witness for the county board of education. Dr. Owens testified that, when he and the other members of the survey team made their study, it was his conclusion that the school system of the county should be reconstituted into two units, one a municipal separate school district unit embracing all the territory lying within the corporate limits of the City of Natchez, and the other, a county-wide unit embracing all the territory of the county lying

outside the corporate limits of the City of Natchez. He thought at that time that was the quickest way to get the reorganization going. But after the survey team had filed its report he was requested to make a further study of the cost of a single administrative unit, which should include the entire county, and the supplemental report referred to above was. filed later as a result of that study. He stated that the one-unit plan would effect an immediate saving of $700,000 in the construction cost of new buildings, and there would also be a saving in administrative costs and expenses, which he estimated would amount to $53,000 each year. He stated that in his opinion the one-unit plan was the answer to the immediate needs of the city and county. He said, ''You have a school system operating in the city; the other has to be made.'' He stated that an enriched program of education could be provided under either plan; but, he said, ''Since you have the facilities there already in the city, you can do it quicker that way.'' He was asked by the chairman, why the county had not provided for the education of the county children. His answer was, ''They have been getting the services from the city, and they have been willing to let the city do it. The people seem satisfied with that arrangement.'' He stated that, if the two-unit plan were adopted, the school children who lived outside the city to the south and west, would have to pass through the ''by-pass'' to get to the schools which they were expected to attend.

Two members of the county board of education testified and R. Brent Foreman, Chairman of the Board of Trustees of the Natchez Municipal Separate School District, also testified. Foreman stated that his board had not appealed from the order of the State Commission, and that he felt that the one-unit system could be put into successful operation in the county, if the trustees could obtain the cooperation of a majority of the people in the county. Dr. Phillip Bayon, who repre-

sented a group of citizens living outside the city, which called itself "The Supporters of the One-Unit System" testified in favor of the one-unit plan. At the conclusion of the hearing the chairman announced that all of the testimony would be carefully considered by the Commission and a decision would be rendered at a later date.

On November 21, 1955, the Commission adopted a formal order reaffirming its disapproval of the order of the county board of education. The county board of education thereupon perfected an appeal to the chancery court.

The cause was heard before the chancellor on March 7, 1956, and at the conclusion of the hearing, the chancellor rendered an oral opinion, which appears, however, as a part of the record, in which he stated that in his opinion the power of the court on appeal was limited to a review of the record that had been made before the State Educational Finance Commission, and to a determination of the question, whether the State Commission had exceeded its authority under the statute, or had acted in an arbitrary or capricious manner in the adoption of its order disapproving the orders of the county board of education. The chancellor held that there was not enough evidence before the Commission in favor of the two-unit plan to support a finding that the Commission had acted arbitrarily or capriciously in disapproving the order of the county board of education; and the chancellor entered a decree affirming the final order of the State Educational Finance Commission and dismissing the appeal.

From that decree the appellant has prosecuted this appeal.

Ten errors have been listed in the appellant's assignment of errors as errors committed by the State Educational Finance Commission, all of which have been brought under review on this appeal in the one general

assignment, that the chancery court erred in rendering its decree affirming the orders of the State Educational Finance Commission and dismissing the appeal of the county board of education.

The points argued by the appellant's attorneys in their briefs may be summarized as follows: (1) That the findings of the State Educational Finance Commission, upon which its order was based, are not supported by substantial evidence, and the action of the Commission in rejecting the plan of reorganization proposed by the county board of education was arbitrary and capricious; (2) that the action of the Commission in rejecting the two-unit plan of reorganization proposed by the county board of education and the board of trustees of the Natchez Municipal Separate School District, and in proposing that one school district be established for the entire county by the enlargement of the Natchez Municipal Separate School District so as to include all the territory of the county, represented an attempt on the part of the Commission to assert authority and power not delegated to it by the Legislature; (3) that the two-unit plan submitted by the county board of education and the Trustees of the Natchez Municipal Separate School District, which was disapproved by the Commission, met all the criteria of the applicable statutes relative to the reconstitution of school districts in the county, and the plan should have been approved by the Commission; and (4) that the plan submitted by the county board of education would have effected the maximum of consolidation of school districts within the county permitted under the statute, in the absence of the voluntary consent of the county board of education and the board of trustees of the Natchez Municipal Separate School District to the adoption of some other plan; and it was not the legislative intent that the Commission should be permitted to withhold its approval of the plan submitted by the county board for the purpose of compelling the

county board to consent to the adoption of a one-unit plan.

We shall consider first the appellant's contention that the findings of the Commission and the order based upon those findings are not supported by substantial evidence, and the action of the Commission in disapproving the order of the county board of education was arbitrary and capricious.

In its final order disapproving the order the county board of education, the State Educational Finance Commission stated that the primary and all-important consideration of the Commission was the educational welfare of the children of Adams County, and that the Commission was convinced ''that the long range educational welfare of such children, the physical, mental, moral, social and educational welfare thereof, the efficiency of operating the schools, and the economic and social welfare of the area involved would not be best promoted or furthered by the creation of a county unit school district in Adams County, Mississippi, embracing all of the territory of said county outside of the corporate limits of the City of Natchez,'' as proposed by the order of the county board of education. The Commission then stated that the existence of one school district embracing all the territory in the county, including that within the City of Natchez, would result in substantial savings in funds necessary for the construction of school buildings and other school facilities in the county; and that the Commission was convinced that the educational welfare of the children of the county as well as the efficiency of the operation of the schools would be best served by the creation of one school district in the county.

It is not necessary that we discuss in detail the evidence which the State Commission had before it when it entered its final order disapproving the order of the county board of education. It should be stated, however, that the report of the survey team, which had made a

survey of the county and city schools under Dr. Owens' direction, contained a mass of valuable information concerning the county and city schools, the locations and various types of school buildings, the number of school children enrolled and the average daily attendance in each school, and also maps and charts showing the distributions of the school population throughout the county, the location of transportation routes, and the proposed sites for new school buildings to be constructed. The Commission had before it copies of that report and copies of the two supplemental reports of re-studies made after the filing of the original report, and also the oral testimony of Dr. Owens, two members of the county board of education and the chairman of the board of trustees of the municipal separate school district, and a mass of statistical information relating to the assessed valuation of taxable property in the county and city, the sources of revenue for the maintenance of the public schools of the county and city, the number of school children from the county who attended the city schools, and the amount paid by the county to the city as tuition for the county students. From the information contained in the reports and oral testimony of Dr. Owens, it appears that approximately one-third of the white school children of the county, residing outside of the City of Natchez, were already attending the city schools; that all of the Negro high school students, grades 9 to 12, residing outside of the city were being transported to the Sadie V. Thompson High School, in the city; and that it was entirely feasible to have all high school students, grades 9 to 12, attend the high schools in the city. It also appears that a substantial saving could be realized in construction costs and in administrative costs by the adoption of a one-unit plan for the entire county.

 █ These are facts which the State Commission had a right to consider; and after a careful study of the record, we think that it cannot be said that there

was no substantial evidence to support the findings of the Commission, or that the chancellor erred in his finding that the evidence was insufficient to show that the Commission had acted arbitrarily or capriciously in disapproving the order of the county board of education.

It is next argued that the action of the Commission in rejecting the two-unit plan of reorganization proposed by the county board of education, and in suggesting that the Natchez Municipal Separate School District be enlarged so as to include all of the territory of the county lying outside the City of Natchez, as well as the territory lying within the city, represented an attempt on the part of the Commission to assert authority and power which had not been delegated to it by the Legislature. But we think there is no merit in this contention.

The State Educational Finance Commission has no power under the statute to initiate any plan of reorganization or consolidation of the school districts of the county. That power has been very wisely delegated to the county board of education. But the exercise of that power by the county board of education is subject to the approval or disapproval of the State Commission; and no order of the county board can become effective until finally approved by the Commission.

The reason for the legislative requirement that the orders of the county boards of education providing for the reorganization of the school districts must be approved by the State Educational Finance Commission may be found in Chapter 11 of the Laws of the Extraordinary Session, 1953, which provides for the creation of the State Commission, and the companion statutes enacted during the same Extraordinary Session.

In Section 1 of Chapter 11, the Legislature has declared "that the maintenance of the uniform system of free public schools (established pursuant to the consti-

tutional mandate set forth in Section 201, Article 8, of the State Constitution), to insure and provide substantial equality of educational opportunity, is the joint responsibility of the State of Mississippi and the local taxing districts thereof." How the Legislature intended that the state and the local taxing units should meet that joint responsibility is clearly set forth in the companion statutes, Chapters 12, 13, and 14, which provide for the reorganization of the school districts in the several counties, and the establishment of a program of state aid for the construction òf school buildings and other school facilities, and for the establishment of a mninimum program of education for all the children legally enrolled in the public schools. Joint responsibility, as shown by the bills enacted, meant that the state would provide state aid funds to help defray the cost of construction of the new school buildings and other school facilities, which would be required to carry out the program of reorganization of the school districts, and that the state would assume a still larger share of the cost of maintaining the school system under the minimum program of education plan. But joint responsibility also meant that the state would reserve to itself a measure of joint control; and with that idea in mind the Legislature has provided in Chapter 12 that the orders of the county boards of education providing for the reorganization of the school districts shall be submitted to the State Educational Finance Commission for its approval or disapproval, and that no such order shall be effective until approved by the State Commission. The same idea has been carried a step further in Section 6 of Chapter 16, Laws of Extraordinary Session, 1953, which provides that no order of the county board of education, creating, altering or abolishing any school district, after the school districts have been reconstituted as provided in Chapter 12, shall be final unless and until the proposed creation,

alteration or abolition shall be submitted to and approved by the State Educational Finance Commission.

 School districts are mere agencies of the state and may be abolished or dissolved at the will of the Legislature, subject of course to constitutional limitation. 47 Am. Jur. 310, Schools, par. 17. In the exercise of its power the Legislature may act directly, or it may delegate its power to subordinate authorities without violating the general rule against the delegation of legislative power. School Disrict v. Callahan, 237 Wis. 560, 297 N. W. 407, 135 A. L. R. 1081. "The Legislature may delegate to officers, boards or other subordinate agencies, the power to create, organize, or alter school districts and other local school organizations, * * * and a subordinate agency so designated or established has such powers, and such only, with respect to the creation, establishment, and alteration of school districts and organizations as may be conferred upon it by statute, and such powers may be enlarged, diminished or taken away at the will of the Legislature. * * * The power delegated to an officer, board, or agency to create or alter school districts may be exercised only under the circumstances prescribed, if any, and in strict conformity with any mandatory directions of the statute. * * * Also, the exercise of the power is subject to such conditions and resrictions as are prescribed, * * *." 78 C. J. S. p. 668, Schools and School Districts, par. 27b (1), and cases cited. See also Annotations, 65 A. L. R. 1524, 135 A. L. R. 1096, 1098.

Chapters 11, 13, 14, and 16, supra, have been referred to by us in this opinion for the reason that they all relate to the same general subject matter as that dealt with in Chapter 12, namely, the reorganization of the school system so as to provide substantial equality of educational opportunity for all children legally enrolled in the public schools. All of the statutes mentioned are in pari materia with Chapter 12 and should be read and

considered for the purpose of determining the legislative intent with reference to the powers conferred upon the State Educational Finance Commission.

 The power delegated to the State Commission in Section 1 of Chapter 12, to approve or disapprove the orders of the county boards of education providing for the reorganization of the school districts, is in our opinion a discretionary power which calls for the exercise of judgment and discretion; and in a case of this kind, where there has been due notice and a full hearing before the adoption of the final order of the Commission, we think that it cannot be said that the order of the Commission disapproving the order of the county board, even though accompanied by a suggestion by the Commission that some other plan of reorganization be adopted, represents an attempt on the part of the Commission to assert authority which has not been delegated to it by the Legislature.

 The next point argued by the appellant's attorneys is that the Legislature, in delegating to the local boards the planning authority for the reorganization of the school districts, has set up certain criteria which must be met before the plans of reorganization submitted can receive state approval, and that it was the intention of the Legislature to confer upon the State Commission only such power as was necessary to enable the Commission to see that the criteria mentioned in the statute were met; that the plan submitted by the county board in this case met those criteria; and that it was the duty of the State Commission to approve the order of the county board. It is assumed that the criteria referred to are those mentioned in Section 1 of Chapter 12, supra, which provides that the order submitted by the county board of education shall be considered by the Commission "from the standpoint of whether the same promotes the physical, mental, moral, social and educational welfare of the children involved, the efficiency of the operation of the

school system of the county, and the economic and social welfare of the various school districts of the county.''

We find nothing in the language quoted, however, to warrant the conclusion that the Commission must approve the order of the county board if it appears that the order submitted will promote in any manner the general objectives mentioned. The language quoted merely enjoins upon the Commission the duty to consider the order of the county board from the standpoint of the objectives mentioned; and the record in this case shows that the Commission did consider the order of the county board from the standpoint of the objectives mentioned, and after considering the same Commission found that the long range educational welfare of the school children, the efficiency of operating the schools, and the economic and social welfare of the area involved would not be best promoted by the creation of a county unit school district embracing all the territory of the county outside the corporate limits of the City of Natchez, as proposed in the order of the county board.

Finally, it is argued that the two-unit plan of reorganization submitted by the county board of education and the trustees of the municipal separate school district represented the maximum amount of consolidation that could be accomplished with the voluntary consent of the Adams County Board of Education and the Trustees of the Natchez Municipal Separate School District; that it was not the legislative intent that the State Commission should be permitted to withhold its approval of a plan of redistricting, whether arbitrarily or otherwise, to enforce consent to a one-unit plan; and that the order of the Commission disapproving the two-unit plan should have been reversed by the chancellor, and the cause remanded to the State Commission with directions that the two-unit plan be approved, and that this Court should therefore reverse the decree of the

chancellor and enter such decree here as the chancellor should have entered.

██ But the right of a county board of education to appeal to the chancery court from an order of the State Commission in a case of this kind does not mean that the court may re-determine, as on a trial de novo, the issues involved in the reorganization controversy, or substitute its judgment for that of the Commission.

██ The powers delegated to the county boards of education and the State Educational Finance Commission, respectively, in the matter of the reorganization of the school districts, are administrative and legislative in character. Cumberland T. & T. Co. v. State, 135 Miss. 835, 100 So. 378; Board of Supervisors of Forrest Co. v. Melton, 123 Miss. 615, 86 So. 369; Board of Supervisors of Marshall Co. v. Stephenson (Miss.), 130 So. 684; Mabray v. School Board of Carroll County, 162 Miss. 632, 137 So. 105.

In Mabray v. School Board of Carroll County, supra, this Court held that Chapter 163 of the Code of 1930, the chapter on common schools, which included the organization and establishment of consolidated schools, was a complete scheme of legislation within itself; and the fact that the power was lodged in the county school boards to put the legislative scheme into effect did not confer on such boards, in doing so, judicial or quasi-judicial power. "Such power," the Court said, "is purely administrative and legislative in character." See also Amite County School Board v. Reese, 143 Miss. 880, 108 So. 439. In State Ex rel. Zilisch v. Auer, 197 Wis. 284, 221 N.W. 860, 223 N.W. 123, the Court said: "Whether the boundaries of a local governmental unit like a city or a school district should be changed "is not a question of law or fact for judicial determination, but purely a question of policy, to be determined by the legislative department." The same idea was expressed by this Court in its opinion in Ritchie v. City of Brookhaven, 217 Miss. 860, 65 So. 2d

436, wherein the Court said: "It is to be conceded that the creation of municipalities and the fixing of the boundaries of municipalities is a legislative function, and therefore a matter for the Legislature. It is to be conceded also that the Legislature may delegate this function to a subordinate body such as a board of mayor and aldermen of a municipality."

But whether the State Educational Finance Commission was acting in a purely administrative or legislative capacity, or in a quasi-judicial capacity, in the matter of approving or disapproving the order of the county board of education in this case, the Commission was exercising a discretionary power vested in it by the statute, and the power of the court upon appeal is limited to a determination of the question, whether the order of the Commission is supported by substantial evidence, or is arbitrary and capricious, and whether the order went beyond the power of the Commission to make, or violated some statutory or constitutional right of an interested party. In reviewing such an order, "power to make the order, and not the mere expediency or wisdom of having made it, is the question." Dixie Greyhound Lines v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579. See also California Company v. State Oil & Gas Board, 200 Miss. 824, 27 So. 2d 542.

The question whether the plan of reorganization of the school districts of Adams County submitted by the county board of education and the board of trustees of the Natchez Municipal Separate School District would best promote the educational welfare of the school children, the efficiency of the operation of the school system of the county, and the economic and social welfare of the various school areas involved, is not a question for judicial determination, but a question of policy to be determined by the legislative and administrative agency to which the Legislature has delegated the power to determine the same. The Legislature, in granting to the

county board of education the right of appeal, did not intend to confer upon the court the power to substitute its judgment for the judgment of the State Educational Finance Commission. The chancellor clearly recognized the limitations imposed upon the power of the court in its review of the order of the State Commission on appeal; and the chancellor after a full hearing affirmed the order of the Commission. We think there was no error in the chancellor's action in affirming the order of the Commission. There was no occasion, however, for the chancellor's dismissal of the appeal, and that part of the decree will be treated as mere surplusage.

After the filing of the record in this Court the appellant filed a motion for leave to file with the record certain exhibits relating to the holding of an election in Adams County on May 29, 1956, under authority of House Bill No. 120 (Ch. 267), Laws of Mississippi, Regular Session, 1956, at which election there was submitted to the qualified electors of the county the question "shall all the territory of Adams County, Mississippi, both within and without the corporate limits of the City of Natchez be included in one municipal separate school district." The exhibits attached to the motion show that the election was held on May 29, 1956, and resulted in a majority of the qualified electors voting in the election who resided within the corporate limits of the City of Natchez voting in favor of the proposition submitted, and a majority of the qualified electors in the election who resided outside the corporate limits of the City of Natchez voting against the proposition submitted. The motion for leave to file a copy of the record of the above mentioned election proceedings was sustained, subject to later consideration by this Court upon the hearing of the case upon its merits.

We have examined House Bill No. 120 referred to above, which was approved on April 6, 1956, and we find nothing in that act that can affect our decision in this

case. The provisions of that act, however, must be taken into account in any further action that may be taken in the matter of the reorganization of the school districts of the county.

Neither the county board of education nor the board of trustees of the municipal separate school district has exhausted its power to act in the matter of the reorganization of the school districts of Adams County and the City of Natchez. See Amite County School Board v. Reese, 143 Miss. 880, 108 So. 439. The State Educational Finance Commission still has the power to consider, and approve or disapprove, any plans for the reorganization of the school districts of the county and city that may be hereafter submitted to it for its approval or disapproval. This Court has no power to substitute a plan of its own for the reorganization of the school districts of Adams County. The deadlock which has developed between the county board of education and the State Commission can be broken only by the cooperative efforts of the two administrative agencies which are charged with the duty of effecting a proper reorganization of the school districts of the county. The powers of each of the two agencies are clearly defined in the statute.

For the reasons stated above, the decree of the lower court is affirmed.

Affirmed.

All justices concur.