COUNTY BOARD OF EDUCATION OF JONES COUNTY, MISS.
*v.* SMITH.

No. 41449          June 13, 1960          121 So. 2d 139

*Beard, Pack & Ratcliff,* Laurel, for appellant.

*Lampkin Butts,* Laurel, for appellee.

Lᴇᴇ, J.

In 1957, when the County Board of Education of Jones County, acting under the statutes passed by the legis-

lature at its 1953 extraordinary session, undertook a reorganization of the county school system, there were in existence thirty-odd districts for white children. A county-wide district, covering the entire area outside of the City of Laurel, was formed with sixteen white attendance centers. The school in the Sharon community was reduced from twelve to eight grades, necessitating the assignment of its seventy three high school pupils elsewhere. Sandersville and Shady Grove Attendance Centers were available, the former being 4.8 miles distant in one direction, and the latter 5.6 miles in another direction. The county board assigned these pupils to Shady Grove. As a result of protests, the board transferred thirty six of the pupils to Sandersville; and seventeen others showed up at that school without any transfer. However, subsequently the attendance of these pupils was approved by the board, and a total of fifty three attended high school at Sandersville during the session of 1957-1958. Among this number was Claude Smith's seventeen year old daughter, Martha Mae, who completed the eleventh grade at that time. However the assignment for that session was effective for one year only.

As the 1958-1959 term approached, the board made it known that the Sharon high school pupils would be required to attend the Shady Grove Center for that session. The parents of thirty one of these pupils again protested and filed a petition for a transfer to Sandersville. There after the parents of twenty two of these pupils sought a review, under Section 6334-03, Code of 1942, Recompiled. After a hearing, the board on September 17, 1958 refused to make the transfers. From that order, Claude Smith appealed to the circuit court.

In the petition which he filed in the circuit court, Claude Smith, as grounds for the transfer, made the following averments: (1) His daughter was subject to severe headaches when exposed to butane gas heat, and she would be spared much suffering if she was permit-

ted to attend Sandersville because the buildings at Shady Grove were heated with butane gas while those at Sandersville were not so heated. (2) His daughter had completed the eleventh grade at Sandersville and had made the normal plans for graduating there in the 1958-1959 session. She had participated in the fund raising campaign for the senior trip to be taken in the spring of 1959, but would forfeit the benefit thereof as the Shady Grove senior class does not take such a trip; she had purchased a class ring, the true meaning and purpose of which would be lost by transfer to another school; and she had been elected to, and had accepted, membership on the school annual staff, and she would be deprived of that honor if her transfer was denied. (3) The board had consistently granted transfers to other pupils throughout the county, and the denial of such to his daughter was arbitrary, unreasonable, and not in accord with treatment to others. (4) Some of the patrons of the Sharon community had been coolly received by the patrons and trustees of the Shady Grove Center where as the relationship of the patrons and authorities of the Sandersville Center was cordial and friendly. (5) Sandersville was characterized as an ''A'' school, while Shady Grove had a rating of ''B''. (6) Sandersville offered certain courses not available at Shady Grove. (7) Sandersville had more space both in its buildings and for playgrounds. (8) The distance of travel was approximately the same. (9) The board failed to consider the application of his daughter for a transfer upon an individual basis, as required by law, and did not consider her needs and welfare.

The evidence, offered before the board, was not taken down by a stenographer. The only papers in the transcript, if it can be called a transcript, were the board's order of assignment, and its order denying a transfer. The trial in the circuit court was completely de novo. Witnesses were called to the stand and testified, somewhat pro and con, as to conditions, and both as to why

the minor should, and should not, be transferred to Sandersville. At the conclusion of the evidence, the court refused the board's requested peremptory instruction, and submitted an issue to the jury as to whether the order of denial should be set aside. The verdict of the jury was that "the order of the county board should be set aside." The board's motion for a new trial having been overruled, it appealed from the judgment which was entered in accordance with the verdict of the jury.

██ █ As to proposition (1), Smith and his daughter both testified that she was subject to severe headaches when exposed to butane gas heat. But there was no medical evidence to that effect. Obviously what they said was based on their opinions. It is common knowledge that there are many different causes for headaches, and the opinions of these non-experts, in a case such as this, does not rise above mere conjecture. The family used butane in the home on certain occasions. The buildings at Shady Grove and Sandersville were both heated with natural gas. The evidence of these two witnesses was wholly insufficient to create a reasonable belief that, if Martha Mae had gone to school at Shady Grove, she would have suffered from headaches as a result of exposure to the kind of heat there used.

As to proposition (2), insofar as the class ring for Sandersville was concerned, it was shown that the rings for both schools had been purchased from the same company, and that this ring could have been changed accordingly on request. Martha Mae's participation in the efforts to raise money for a senior trip and the denial to her of the honor of working on the annual staff were not sufficient to overturn the board's judgment in refusing to grant her a transfer.

As to proposition (3), the evidence showed conclusively that a long-time "swap" agreement had existed between the county board and the school authorities of the City of Laurel, and that transfers, in proper cases, were granted to Ellisville, where the junior college is

located. Martha Mae lacked only one unit for graduation. Because she did not get a transfer, she refused to go to school at all. There was no evidence whatever to sustain the contention that the denial, in this instance, was arbitrary or unreasonable or not in accord with the treatment of other children in the county.

As to proposition (4), the alleged coolness to Smith and others at a PTA meeting at Shady Grove, if true, was of such a picayunish nature that it constituted no justification whatever to the board for granting this transfer from Shady Grove to Sandersville.

As to proposition (5), it is true that Smith testified that Superintendent Powell told him that Sandersville had an "A" rating as compared to Shady Grove's rating of "B". But Powell denied this most positively and showed furthermore that all of the schools are in the same system; that if one school had been "knocked down" to a "B" rating, all of the schools would have been affected in the same manner; and that both Shady Grove and Sandersville had the same rating.

As to proposition (6), while it is true that both Smith and his daughter testified that they had heard that biology, which Martha Mae wished to study, would not be taught at Shady Grove, the evidence from those who had full knowledge as to the curriculum showed beyond question that this subject was taught in that school, and that, in fact, Shady Grove actually offered an additional subject, namely, general science.

As to proposition (7), while Smith and another witness or two were of the opinion that the buildings and playgrounds at Sandersville were more spacious and larger, and witnesses were asked if, according to the report of the Ole Miss Survey Team, these conditions did not prevail, it must be borne in mind that these witnesses were not architects or engineers. This so-called survey was not introduced in evidence. Professor Powell testified that, if such figures appeared in the report, he did not know where such information was obtained.

As a matter of fact, he testified positively that Shady Grove had more adequate classrooms than Sandersville. At all events, however, the design and construction of school buildings is the responsibility of the board; and so long as they meet the particular needs of that school and are sanitary, it is not permissible for an individual patron to veto and nullify their judgment.

As to proposition (8), it was only two-thirds of a mile farther from Sharon to Shady Grove than from Sharon to Sandersville. But the road to Shady Grove was paved whereas the other road had a gravel surface. Obviously a paved road is more desirable even though it is two-thirds of a mile longer in this instance.

As to proposition (9), the evidence showed that all of the high school pupils from Sharon, except Martha Mae and seven others, attended Shady Grove. During the 1957-1958 session, when she went to school at Sandersville, Martha Mae had driven her own car. Her father did not ask for a transfer under the same conditions as prevailed during the previous session. When transfers were being sought in this instance, an inquiry was made of him and the others as to whether they would consider transporting their children, if transferred, and the reply was "No, we want transportation and all that goes with it." Under the circumstances the board was fully warranted in declining to make a special exception in this case.

Section 6328-31 of the Code provides as follows: "Organization of school— The board of trustees shall organize a school so as to avoid unnecessary duplication and shall determine what grades shall be taught at each school and shall have the power to specify attendance areas and to designate the school each pupil shall attend."

Section 6334-01 of the Code provides as follows: "Trustees to assign pupils—When any child shall apply or present himself for enrollment in or admission to the public schools of any school district of this state, the board of trustees of such school district shall have

the power and authority to designate the particular school or attendance center of the district in which such child shall be enrolled and which he shall attend, and no enrollment of a child in a school shall be final or permanent until such designation shall be made by said board of trustees. No child shall be entitled to attend any school or attendance center except that to which he has been assigned by the board of trustees; however, the principal of a school or superintendent of the district may, in proper cases, permit a child to attend a school temporarily until a permanent assignment is made by the board of trustees.''

Since the schools of Jones County, outside the Laurel Separate School District, constitute a county-unit system, the jurisdiction and control of the assignment of pupils is vested in the county board of education.

■■ ■ The plain intent of the legislature cannot be ignored. Courts must enforce the school laws in accordance with the mandate from the legislature. Hinze v. Winston County Board of Education, 233 Miss. 867, 103 So. 2d 353.

The considerations which must govern the board in making assignments are found in Section 6334-02 of the Code, which provides as follows: ''Considerations in making assignments—In making assignments of children to schools or attendance centers as provided in this act, the board of trustees shall take into consideration the educational needs and welfare of the child involved, the welfare and best interest of all the pupils attending the school or schools involved, the availability of school facilities, sanitary conditions and facilities at the school or schools involved, health and moral factors at the school or schools, and in the community involved, and all other factors which the board of trustees may consider pertinent, relevant or material in their effect on the welfare and best interest of the school district and the particular school or schools involved. All such assignments shall be on an individual basis as to the par-

ticular child involved and, in making such assignment, the board of trustees shall not be limited or circumscribed by the boundaries of any attendance areas which may have been established by such board of trustees.''

Provision is made, under Section 6334-03, in a case such as this, for reconsideration of an assignment by the board; and an aggrieved party may, under Section 6334-04 of the Code, appeal to the county board of education. An appeal may then be taken, under Section 6334-05 to the circuit court of the county in which the district is situated.

■■ The trustees of schools are not judicial officers, but are administrative bodies without any power to exercise judicial functions. Moreau v. Grandich, 114 Miss. 560, 75 So. 434; University of Mississippi v. Waugh, 105 Miss. 623, 62 So. 827, L. R. A. 1915D 588, 237 U. S. 589, 59 L. Ed. 1131.

■■ In establishing schools and defining the boundaries thereof, the action of the county board of education is more legislative than judicial, and partakes largely of the characteristic of legislation. Amite County School Board v. Reese, 143 Miss. 880, 108 So. 439.

■■ The grant, by the legislature, of power to county boards of education to organize and establish schools does not confer on such boards judicial or quasi-judicial power—their power is purely administrative and legislative in character. Mabray v. School Board, 162 Miss. 632, 137 So. 105.

In the case of Adams County Board of Education v. State Educational Finance Commission, 229 Miss. 566, 91 So. 2d 524, this Court reiterated the principle laid down in the above cited cases to the effect that ''the powers delegated to the county boards of education * * * in the matter of the reorganization of the school districts, are administrative and legislative in character.'' Besides that opinion said that ''School districts are mere agencies of the state * * *.'' It is clear that the opinion in that case recognized the rule that, regardless of wheth-

er one of these agencies of the state is acting in a purely administrative or legislative capacity or in a quasi-judicial capacity, courts, on appeal to them, are limited to a determination as to whether the action of such agency is supported by substantial evidence, or is arbitrary and capricious, or transcends its power to make, or violates some statutory or constitutional right of an interested party.

■■ ■ The evidence of the plaintiff, together with the reasonable inferences therefrom, wholly failed to show that the action of the board, in denying the transfer in this instance, was not supported by substantial evidence, or was arbitrary and capricious, or transcended its power to make, or violated a statutory or constitutional right of the minor. On the contrary, the record disclosed that such action was supported by the overwhelming weight of the evidence, and was not arbitrary and capricious, and did not transcend the power of the board to make, and did not violate any statutory or constitutional right of the minor. The evidence for the plaintiff, together with the reasonable inferences therefrom, was not sufficient to make an issue to be resolved by the jury. The court therefore erred in refusing to grant the defendant's requested peremptory instruction. Because of that error, the case must be reversed and a judgment must be entered here for the appellant.

■■ ■ Due to the disposition of the case on the above stated ground, it is unnecessary to consider the appellant's assignment of error on the part of the trial court in ordering a jury trial at which the witnesses gave oral testimony. The appellant did not raise that question in the trial court. Both sides seemed to take it for granted that such course of procedure was required. This Court, without approving or disapproving the procedure, declines to pass upon a point, which the parties did not make in the trial court, and, for that reason, pretermits a decision on that question until the same may be passed upon by a trial court.

From which it follows that the judgment of the trial court must be reversed, and a judgment will be entered here for the appellant.

Reversed and judgment here.

*McGehee, C. J.,* and *Hall, Kyle, Ethridge* and *Gillespie, JJ.,* concur.

## ON APPELLEE'S MOTION TO DOCKET AND DISMISS THE APPEAL

LEE, J.

Appellee has filed a motion to docket and dismiss the appeal in this cause for the reason that the appellants have failed to give bond as required by Section 1162, Code of 1942, Recompiled.

██ █ Under Sections 6271-02 to 6271-07, inclusive, Code of 1942, Recompiled, and Adams County v. State Educational Finance Commission, 229 Miss. 566, 91 So. 2d 524 and Harrell v. City of Jackson, 229 Miss. 815, 92 So. 2d 240, it is clear that the appellants are the agents of the state and of the County of Jones within the purview of Section 1210, Code of 1942, Recompiled, and that they are entitled to appeal without giving an appeal bond.

The motion is therefore overruled.

Overruled.

*McGehee, C. J.,* and *Kyle, Holmes* and *Arrington, JJ.,* concur.