Daniels, et al. *v.* Sones, et al.

No. 42421          December 17, 1962          147 So. 2d 626

*Bobby J. Garraway,* Lumberton; *William Joel Blass,* Wiggins, for appellants.

*Jesse W. Shanks, Wm. E. Andrews,* Purvis, for Board of Supervisors and Board of Education, appellees.

*M. M. Roberts,* Hattiesburg; *Butler, Snow, O'Mara, Stevens & Cannada,* Jackson; *Armstrong & Hoffman,* Hazlehurst, for appellees, Allen & Company and Alvis & Company.

GILLESPIE, J.

Appellants, complainants below, are residents of Township 1 North, Range 16 West, Lamar County, Mississippi. They requested the attorney general and the district attorney to file this suit; both declined. The defendants below, appellees here, are the Board of Supervisors of Lamar County, the Superintendent of Education of Lamar County, the Lamar County Board of Education, the members of which also act in the capacity of trustees of Lamar County School District, and two bond dealers, Allen and Company and Alvis and Company.

The bill charged that on March 6, 1961, Lamar County Board of Education passed a resolution requesting the Board of Supervisors of Lamar County to transfer $400,000 from the principal fund of the Sixteenth Section of Township 1 North, Range 16 West, Lamar County, Miss., to a building fund to be expended by the Lamar County Board of Education for the construction of school buildings at attendance centers within the Lamar County School District, which includes practically the entire county. Lamar County Board of Supervisors had theretofore bought for said township certain county and municipal bonds as investments for the aforesaid Sixteenth Section funds for Township 1 North, Range

16 West. The Board of Education adopted an order on April 17, 1961, requesting that $415,000 of face value of said bonds be sold. On May 4, 1961, the Board of Supervisors of Lamar County entered an order for the sale of the aforesaid securities to the highest and best bidder at market price, and in the same order accepted the bid of Allen & Company and Alvis & Company for $382,983, plus accrued interest, and the bonds were sold and delivered in accordance therewith. There was no public advertisement in connection with the sale of said securities. The bill charged the bonds were sold at less than actual or market value.

The complainants alleged that all of said transactions, including the sale of said bonds and the transfer of the said funds, were void and prayed for a mandatory injunction for the restoration of said bonds to the account of the township and for other relief. The funds originally used to purchase said bonds for the account of Township 1 North, Range 16 West, Lamar County, were derived from oil royalties in the Baxterville Oil Field, which included Section 16, Township 1 North, Range 16 West, Lamar County, Mississippi.

Demurrers of all defendants were sustained and the bill dismissed and the complainants appealed to this Court.

The question is whether the original bill stated a cause of action. This question has four separate points of inquiry, namely: (1) Did the sale of the securities by the Board of Supervisors violate Section 100 of the Constitution of the State of Mississippi? (2) Did the private sale of the securities by the Board of Supervisors violate Section 2925 of the Miss. Code of 1942? (3) Did the charge in the original bill as to the manner of sale and the fact that the securities were sold for less than actual market value state a cause of action against the members of the Board of Supervisors? (4) Does the legislature have authority to authorize the ex-

penditure of funds derived from Sixteenth Section lands for the support of schools in the school district which includes the township but which schools none of the children living in the township attend?

1.

■■ ■ Section 100 of the Constitution has no application to the sale of the bonds in question. That section provides in general that no obligation of any person, association or corporation held or owned by the county, state, city, or town shall be remitted, released, or in any way diminished by the legislature except by payment thereof into the proper treasury. In our opinion, this section of the Constitution has reference to direct obligations to the state or other governmental units such as taxes, and that it was not intended to govern the handling of bonds and other securities purchased by the state or other governmental subdivision for investment purposes.

2.

■■ ■ Section 2925, Miss. Code of 1942, has no application to the transaction involved in this suit. There is a specific statute dealing with the purchase and sale of bonds and other direct obligations of the United States, the State of Mississippi, or any county or municipality in this State. Section 6532-16, Miss. Code 1942, is as follows:

"Investment of surplus funds. — Whenever any municipality, on behalf of municipal separate school districts, or any county, on behalf of any other school district, shall have on hand any bond and interest funds, any funds derived from the sale of bonds, or any other funds in excess of the sums which will be required for expenditure during the succeeding twelve months, and which are not needed or cannot by law be used for the payment of the current obligations or expenses of such

school district, the governing authorities of such municipality, or the board of supervisors of such county, as the case may be, shall have the power and authority to invest such excess funds in any bonds or other direct obligations of the United States of America or the State of Mississippi, or of any county or municipality of this state, which such county or municipal bonds have been approved by a reputable bond attorney or have been validated by a decree of the chancery court, and in any event the bonds or obligations in which such funds are invested shall mature or be redeemable prior to the time the funds so invested will be needed for expenditure. When bonds or other obligations have been so purchased, the same may be sold or surrendered for redemption at any time by order or resolution of such board of supervisors or such governing authorities, and the president of the board of supervisors, and the mayor of the municipality, as the case may be, when authorized by such order or resolution, shall have the power and authority to execute all instruments and take such other action as may be necessary to effectuate the sale or redemption thereof. When such bonds or other obligations are sold or redeemed, the proceeds thereof, including accrued interest thereon, shall be paid into the same fund as that from which the investment was made, and shall in all respects be dealt with as are other moneys in such fund.''

This statute deals with the specific question of investing funds by purchasing bonds described therein and the sale or surrender for redemption of such bonds when necessary. This is the statute governing the matter in question and not Sec. 2925, Miss. Code 1942, which is limited to the disposal of personal property belonging to the county or any subdivision thereof. The Sixteenth Section School Funds do not belong to the county or a subdivision thereof, but to the school district which is a subdivision of the State. Adams County v. State Edu-

cational Finance Commission, 229 Miss. 566, 91 So. 2d 524.

### 3.

We are of the opinion that the complainants stated a cause of action against the individual members of the Board of Supervisors. The bill charged that the bonds, a list of which is therein contained, were in many instances purchased at a premium, and that the order of the board stated that they were to be sold to the highest and best bidder at market price, but in the same order, on the same date, accepted the bids of Allen & Company and Alvis & Company for $382,983, which was $32,000 below the face value of said bonds, and which was below actual or market value. The bill also charged that the board sold said bonds without proceeding in accordance with common prudence and sound business practices; that the members of the board were in a fiduciary capacity in the handling of said school funds and the bonds purchased therewith and the manner of handling said sale was a legal fraud.

We hold that the bill of complaint stated a good cause of action against the individual members of the Board of Supervisors and the lower court erred in sustaining the demurrer as to them. The Board of Supervisors, acting in a fiduciary capacity in the handling of Sixteenth Section funds, are required to use ordinary prudence and reasonable care in the handling of said funds, which, of course, includes the sale of the bonds in question. The bill charges that the standard of care exercised by ordinary business men was not used in this instance. It is true that the bill of complaint could have been more specific but if it be conceded that the demurrer raises a doubtful question, the demurrer should be overruled. Sec. 310, Griffith, Miss. Chancery Practice.

## 4.

The final question raised by this appeal is whether the legislature has authority to authorize the expenditure of funds derived from Sixteenth Section lands for the support of schools in the school district which includes the township but which schools none of the children living in the township attend. The bill of complaint charges and the demurrer admits that the schools to be constructed with the Sixteenth Section funds are within the Lamar County School District and that there are five attendance centers within the Lamar County School District, and all or at least a part of the funds are to be expended in the construction of attendance centers which the children living in Township 1 North, Range 16 West, do not attend. This District includes practically all of Lamar County. [1]

Lamar County lies within the territory acquired by the State of Mississippi from the Choctaw Indians by the Treaty of Dancing Rabbit Creek on September 28,

---

[1] For those interested in pursuing the history of the Sixteenth Section lands within the Choctaw Purchase, the following references are made: U. S. Ordinance of July 13, 1787 (U. S. Land Laws 115); Land Law Law No. 362, enacted by Congress of the U. S. in 1787; Act of Congress of April 7, 1798, forming the Miss. Territory and granting the people of the Territory the same advantages granted the people of the Northwest Territory under the ordinance of July 13, 1787; Cession of Georgia, April 24, 1802 (Hutchinson's Code, p. 55), ceding to the U. S. the territory now comprising the larger part of Alabama and Mississippi; Act of Congress of March 3, 1803, 2 Stat. 229 (1803); Act of Congress, March 1, 1817, creating the State of Mississippi (Hutchinson's Code, p. 59); First Constitution of Mississippi, August 15, 1817, Art. VI, Sec. 20 (Hutchinson's Code, p. 34); Treaty at Dancing Rabbit Creek September 28, 1830, whereby Choctaw Indians extinguished their claim to that part of Mississippi formerly belonging to the Choctaws and thus perfecting title to the Choctaw Purchase (Hutchinson's Code, p. 121, et seq.); Luckett, Miss. L. J., May 1962, Mississippi Sixteenth Section School Lands.

1830. The land had theretofore been ceded to the United States by the Act of Cession by the State of Georgia and several acts of Congress relating thereto. Under the terms of the aforesaid acts, all Sixteenth Sections were "reserved in each township for the support of schools within the same." There is no dispute between the parties to this suit in regard to the status of Sixteenth Section lands. They agree that funds derived from Sixteenth Section lands are trust funds dedicated to the support of township schools. Lambert v. State, 211 Miss. 129, 51 So. 2d 201 (1951).

██ █ In administering the trust as to the Sixteenth Section lands in the Choctaw Purchase, as well as those acquired by the Chickasaw Cession, the state can only act through its legislature and in so doing assumes the same measure of responsibility that pertains to it in the exercise of its law making power. City of Corinth v. Robertson, 125 Miss. 31, 87 So. 464.

Article 8, Sec. 211, Constitution of 1890, provided for the leasing of Sixteenth Section lands and that such lands could not be sold. The Constitution of 1890 did not make any specific provision with reference to the appropriation or disposition of funds derived from Sixteenth Section lands. In 1955 the Constitution was amended in several respects regarding education, and Sec. 213-b(e) now provides as follows:

"The legislature may appropriate state funds and authorize counties, municipalities and other governmental subdivisions and districts to appropriate funds, including poll tax and sixteenth section funds, to aid educable children of this state and to secure an education."

By Chap. 12, Laws of Extraordinary Session 1953, all school districts then in existence in the State of Mississippi were abolished and said districts were reorganized, consolidated and reconstituted within the time permitted by said statute and amendatory acts. Pursuant thereto, the Lamar County School District was organized

with the five attendance centers hereinabove mentioned.

Sec. 6598-02, Miss. Code of 1942 (laws of 1958, Chap. 303, Sec. 2) provides in part as follows: "All funds derived from such lands shall be credited to the school districts of the township in which such sixteenth section lands may be located, or to which any sixteenth section lieu lands may belong and each depository shall keep a separate account for each such district. Such funds shall not be expended except for the purpose of education of the educable children of the school district to which they belong, or as otherwise may be provided by law."

Sec. 6606-01, Miss. Code 1942, Recompiled, provides as follows:

"The expendable funds derived from sixteenth section or lieu lands may be expended for the building and repair of school houses, teachers' homes and other school facilities, the purchase of furniture and equipment for same, the payment of teachers' salaries and for all other purposes in operating and maintaining the schools of the district to which such funds belong for which other available school funds may be expended. Such funds may also be expended for clearing, draining, reforesting, and otherwise improving any sixteenth section lands of the township to which any such available funds may belong. Such funds may also be expended for the purpose of paying any drainage district taxes, costs, expenses and assessments for which the sixteenth section may be liable, and in such case the same shall be paid by the county board of education out of any funds which would otherwise be paid over to the school district entitled thereto under the provisions of this act."

Section 6598-03, Miss. Code 1942, Recompiled, provides as follows:

"All moneys heretofore or hereafter derived from the leasing of said lands for oil, gas and mineral purposes, including any bonus, delay rental or royalty payable under such leases, and all moneys derived from

the annual payment of rents from the leasing of said lands for agricultural, residential, commercial, industrial, grazing or other purposes, or derived as interest upon loans or investments of principal funds, and all moneys heretofore or hereafter derived from the sale of timber, may be expended for any of the purposes authorized by law, whether said moneys are on hand in the township interest fund or have been transferred to the principal fund. In cases where said moneys have been transferred to the principal fund, and it is determined to expend same for any of the purposes authorized by law, such moneys shall be transferred to the proper fund for expenditure upon order of the county board of education and pay certificates issued by the county superintendent of education. However, no moneys in the principal funds of the various counties at the effective date of this act, or moneys which may be repaid into such funds by virtue of loans outstanding at the effective date of this act, may be expended except for the purpose of providing local funds for any building project approved by the state educational finance commission, or to provide additional funds for forest stand improvement as set forth in section 14 (Sec. 6598-14) and 15 (Sec. 6598-15) hereof.''

It is apparent that at the time of the Cession Act by the State of Georgia and the Acts of Congress creating the trust as to the Sixteenth Section lands in the State of Mississippi school districts were small and the schools in many instances were actually located on the Sixteenth Section reserved for schools. See Hutchinson's Code, p. 211. By a gradual process of change in transportation, population, roads, and educational requirements, school districts became larger and less numerous, culminating in the reorganization of all the school districts of the state under the 1953 Act. The constitution and the laws of this State and the decisions of this Court all recognize that the Sixteenth Section lands

are held in trust by the State for the purposes stated, and as near as practicable the purposes of this trust have been carried out insofar as the disposition and use of the funds are concerned. The time has come when it is impracticable to operate schools on a township basis and the nearest approximation of the original trust created as to the Sixteenth Section lands is to provide for the expenditures of funds derived therefrom in the construction and maintenance or other support of the school districts which includes the township. There was never any provision that these funds were to be spent for particular individuals. And since school districts change from time to time and under the present laws children may be transferred from one school to another, it would be wholly impracticable, if not impossible, to allocate Sixteenth Section funds to the particular attendance center or centers where the township children attend.

The expenditure of the funds involved in this case is authorized by the Constitution and the acts of the legislature. The schools of the district which include the township are now the township schools. The present method of handling the Sixteenth Section funds complies with the original trust as near as possible under present conditions. In effect, it is a statutory adoption of the equitable doctrine of approximation, or cy-pres.

For the reasons stated, we hold that the bill of complaint stated a cause of action against the individual members of the Board of Supervisors, but as to all of the other defendants, the lower court correctly sustained demurrers and properly dismissed the bill.

Affirmed in part and reversed in part and remanded.

*McGehee, C. J., and McElroy, Rodgers and Jones, JJ.,* concur.