MYERS et al. v. BOARD OF SUP'RS OF DE SOTO COUNTY.

(Division B. Jan. 20, 1930. Suggestion of Error Overruled February 17, 1930.)

[125 So. 718. No. 28346.]

Wells, Jones, Wells & Lipscomb, of Jackson, and Logan & Barbee, of Hernando, for appellants.

Logan & Barbee, of Hernando, for appellant.

Holmes & Bowdre, of Hernando, for appellee.

256

Argued orally by **R. F. B. Logan** and **W. C. Wells**, for appellant, and by **Paul Bowdre**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This is an appeal from the circuit court involving adding territory to a consolidated school district. A petition was presented to the board of supervisors alleging that the territory involved desired to be added and annexed to the Olive Branch consolidated school district and shall assume its pro rata of the outstanding indebtedness of the said consolidated school district; that the territory is adjacent to the said district; and that the territory constitutes the major portion of the Stonewall public school including the school building of such school district.

The petition embraces sections 28, 29, and 30, of township 2, range 5; and that part of section 25, township 2, range 6, which lies east of Coldwater river; and that part of section 36, township 2, range 6, which lies east and south of Coldwater river; all of sections 31, 32, and 33 of township 2, range 5; the north half of section 1, township 3, range 6; the northeast quarter, the southeast quarter, and the north half of the northwest quarter of section 6, township 3, range 5; all of sections 4 and 5, of township 3, range 5; that part of section 12, township 3, range 6, which lies north of Byhalia creek; and that part of sections 7, 8, and 9, of township 3, range 5, which lies north of Byhalia creek. Reference was made in the petition to a certain map for the location of Byhalia creek.

By reference to a map in the record it appears that the territory to be added to the Olive Branch school district lies in a triangular form between Coldwater river and Byhalia creek, but there are certain lands left out of the petition which lie in said triangle. The south half of section 1, township 3, range 5, is omitted, while the north half of said section lying to the north of the omitted territory and section 12 lying to the south of it are included in the district. Likewise the southwest quarter of section 6, township 3, range 5, and the south half of the northwest quarter of section 6 are omitted from the territory, thus leaving out of the territory to be added only a fraction of the Stonewall school district, containing five hundred sixty acres, with an insufficient population to maintain a school therein.

It will be seen from the statement that the territory sought to be added is so laid off as to gerrymander the south half of section 1, and the southwest quarter of section 6, and the south half of the northwest quarter of section 6, and other territory lying in the form of a triangle west of this territory and in the angles made by the confluence of the Coldwater river and by Byhalia creek. Coldwater river runs approximately from northeast to southwest at this point, and Byhalia creek runs triangular across section 9, township 3, entering almost at the northeast angle and going to the southwest angle of said section, and thence in a westerly direction slightly north of the section lines of 8, 7, and 12, shown by the map.

When the petition was presented to the school board, Albert Myers, Jr., G. T. Long, W. T. Leonard, and W. J. Birmingham, citizens and residents and taxpayers of the territory omitted from the petition to annex, protested against the annexation, setting forth that T. C. Seago, B. O. Kuntz, C. N. Pryor, Mrs. C. M. Short, O. G. Alderson, C. C. Herrington, T. P. Brady, L. F. Ragsdale, and J. E. Qualls signed and filed the petition requesting the election. It was denied in this protest that the major-

ity of the school patrons who reside in the territory sought to be annexed signed the petition. It was alleged that it was an attempt to change the boundaries of Olive Branch school district, which had levied a tax and been in operation for one session, and that the boundaries of such district could not be ordered changed without a petition signed by a majority of the patrons within such consolidated district, which had not then been filed. It was then alleged in the protest that the territory above mentioned was left out leaving it without school facilities, and that the Stonewall school in which district the omitted territory was would be deprived of facilities and the school would have to be closed.

At the same session of the board other petitioners appeared and sought to have the omitted territory within the Stonewall school district incorporated in the petition to be annexed to the Olive Branch consolidated school district. It was alleged in this petition that the petition as presented would leave a territory, one and a half miles long east and west, and one-half mile wide at its west end, and three-quarters of a mile wide at its east end, without any school facilities, and it would be unjust, and inequitable, and unfair to do so. It was also alleged that the territory sought to be annexed practically surrounds the home of Mrs. Herrington, and that she owns the south half of the southwest quarter, less twenty acres, and the north half of the southwest quarter, and the south half of the northwest quarter of section 6, township 3, range 5; and that the petitioner, Mrs. Julia A. Dunn, lives on and owns the north part of the southwest quarter of section 1, township 3, range 6.

The board denied this petition to be incorporated into the original petition and adjudged that the majority of the school patrons of the adjacent territory had signed the petition, and ordered an election to determine whether the majority of the electors would vote therefor, which election resulted in eleven qualified electors voting for the annexation and nine against. The board then can-

vassed the returns of the election and declared the result and passed an order to that effect, from which an appeal was prosecuted to the circuit court.

In the circuit court the case was tried upon an agreed statement of facts in which it is agreed that the petition was signed by only nine persons, setting out their names, and all of them live and reside in the territory sought to be added to the Olive Branch consolidated school district; that the territory mentioned and described in the petition is contiguous to the Olive Branch school district, and all in De Soto county, Mississippi; that if said territory is added or annexed to the Olive Branch school district, the south half of section 1, township 3, range 6, the south two hundred forty acres of the west half of section 6, township 3, range 5, containing five hundred sixty acres, will be isolated and without school facilities; that the petitioner, Mrs. Herrington, and others, asked that the said territory be included in the original petition so that, if the election carried, the said five hundred sixty acres of land will not be without certain school facilities; that the original petitioners, Seago and others, do not know why the five hundred sixty acres of land were left out or not included in the territory sought to be annexed. It was further agreed that Albert Myers, Jr., and Mrs. Albert Myers, Jr., Mr. and Mrs. B. O. Kuntz, Mr. and Mrs. J. E. Qualls, Mr. and Mrs. O.. G. Alderson, Mr. and Mrs. G. T. Long, Mrs. Annie Hartsfield, Mrs. C. M. Short, Mr. and Mrs. C. C. Herrington, Mr. & Mrs. T. C. Seago, Mrs. L. F. Ragsdale, Mr. and Mrs. C. N. Pryor, and Mr. and Mrs. T. P. Brady live and reside in the territory sought to be annexed to the Olive Branch consolidated school district, and that each and all of them have children living with them of school age. It was further agreed that seven parents resided in the territory sought to be annexed who have children attending the 1928-29 session of Stonewall school (naming them); that four of the seven signed the petition for annexation; and that there are no other par-

ents in the territory sought to be added, except the seven named, who are patronizing the Stonewall school during the present session (1928-29). It was further agreed that Mr. and Mrs. T. P. Brady, Mr. and Mrs. C. N. Pryor, Mr. and Mrs. T. C. Seago, Mr. and Mrs. B. O. Kuntz, Mrs. C. M. Short, Mrs. Annie Hartsfield, parents, residing in the territory sought to be annexed, have children who are in grammar grades and not in high school, but are not patronizing the Stonewall school at this session, said parents sending their children to other grammar schools not located in the territory sought to be added. It was further agreed that Mr. and Mrs. Seago, Mrs. C. M. Short, and Mrs. Annie Hartsfield patronized the Stonewall school during the preceding session, but not the present session; and that Mr. and Mrs. Albert Myers, Jr., and Mr. & Mrs. G. T. Long, are parents who reside in the territory to be added, but have not patronized the Stonewall school for several sessions, their children being now in high school, and the Stonewall school being only a grammar school. It was further agreed that the Olive Branch consolidated school and the Stonewall common school teach up to and include the eighth grade and no higher; and that the territory sought to be added practically takes in all of the Stonewall school district.

The court below affirmed the judgment of the board of supervisors after consideration, from which this appeal is prosecuted here.

By section 39, chapter 283, Laws of 1924, constituting the school code, appearing also in Hemingway's 1927 Code, section 8674, it is provided: "Separate districts shall be made for the schools of the white and colored races, and the districts for each race shall embrace the whole territory of the county outside the separate school districts. A regular school district shall not contain less than forty-five educable children of the race for which the district is established, except where too great distance or impassable obstructions would debar children from school privileges. In such cases the board may, in

its discretion, establish a regular district containing not less than fifteen educable children. The district shall be so arranged as to place all children within reasonable distance of the schoolhouse; and one public school shall be maintained in each district; but when the average attendance at any school shall be less than five children for any month, the school shall be discontinued by the superintendent. In places where swamps, large streams, or other bodies of water or marsh, not crossed by foot bridges, render it impracticable to establish regular school districts as provided above, the school board may establish special districts for such children as live in the forks or bends of streams or other bodies of water, or who are prevented from attending school by other impassable obstructions; provided that a special district shall not be established for less than ten educable children. In defining the boundaries of school districts the school board shall pay due regard to the larger water courses of the county, using parts of them as boundary lines whenever practicable. In counties not laid off into townships the metes and bounds of the school districts shall be defined by streams, by farm lines, or otherwise."

By section 201 of the Constitution of 1890 it is provided that: "It shall be the duty of the legislature to encourage by all suitable means, the promotion of intellectual, scientific, moral and agricultural improvement, by establishing a uniform system of free public schools, by taxation, or otherwise, for all children between the ages of five and twenty-one years, and, as soon as practicable, to establish schools of higher grade."

Section 205 of the state Constitution of 1890 provides that: "A public school shall be maintained in each school district in the county at least four months during each scholastic year."

Section 207 of the Constitution of 1890 provides that: "Separate schools shall be maintained for children of the white and colored races."

262

The above section of the Code of 1927, Laws of 1924, chapter 283, carried out the constitutional idea of dividing the whole territory of a county into school districts convenient for each child to attend public schools. Every acre of land in the county and every educable child in the county must be in a school district where it may attend the public schools without undue inconvenience, and thus procure rudimentary education at least. When the schools have been thus established the districts cannot be changed so as to deprive any educable child of the county the opportunity to attend school. As above stated, every child must be in a school district, and every part of the lands of the county must likewise be in a school district. What was here done, under the agreed statement of facts, was to leave five hundred sixty acres of land and several educable children outside of any school district, no provisions having been made in changing the district to annex this territory to any other convenient school district. This feature of the system was dealt with in State ex rel. Cowan, District Attorney, v. Morgan, County Superintendent, 141 Miss. 585, 106 So. 820. In the second syllabus of that case it is said: "Under Constitution 1890, section 205, and Laws 1924, chapter 283, section 91, county school board cannot discontinue all schools in an established and existing district so long as resident children are not furnished other available public school facilities, though there be less than forty-five educable children therein."

In the third syllabus it is said: "If county school board has implied authority under Laws 1924, chapter 283, section 38, to abolish districts by so altering their boundaries as to combine several, no part of the county may be left out of a district, and districts must be arranged with regard to impassable obstructions and so as to place all children within reasonable distance of school as required by section 39."

By section 110, chapter 283, Laws of 1924 (Hemingway's 1927 Code, section 8745), it is provided:

"Territory adjacent to a consolidated school district may be added to said consolidated school district having an outstanding indebtedness under the following conditions, to-wit:

"A petition signed by a majority of the school patrons in the territory asking that the territory described therein be added to the consolidated school district and that said territory assume its pro rata share of the outstanding indebtedness of the consolidated school district, shall be filed with the board of supervisors who shall order an election in said territory submitting the question of whether the territory shall be added and assume its pro rata share of the said indebtedness. If a majority of the qualified electors voting shall favor said question, the school board shall write an order adding said territory to said consolidated school district. The board of supervisors shall levy the same tax on the added territory as on the original district for the support and maintenance of said school and the liquidation of the indebtedness."

This section must be construed with the section above quoted, providing that the territory must be laid off so as to embrace the whole county in some school district, and so that every child in the county may attend the public schools, etc.

In the case before us the Stonewall school district is practically absorbed by the Olive Branch consolidated district, but not entirely so. The territory omitted is insufficient to constitute a special district and has not been added, nor does the proceeding provide for it to be added, to any convenient district. It is necessary, therefore, in following section 8745, that a school district must be either entirely added to the consolidated district or there must remain enough territory and pupils in the part not added to maintain a public school therein. If enough do not remain, then the proceeding is defective and cannot be carried out, because boards cannot constitutionally so arrange districts as to leave any child

of school age without facilities for attending the public schools. We wish to say, also, that the method pursued in the present case of gerrymandering the districts so as to run around persons desired to be left out cannot be countenanced under the law. A proceeding to add territory must be operated in a fair, just, and sensible manner so as not to unduly discriminate against people living in the district.

The proceeding here is consistently analogous to that in Gore v. Doolittle, 77 Miss. 620, 27 So. 997. It is true that the proceeding there was to create a stock law and not a school district, but the principles there announced are applicable to a proceeding to create school districts. There may be, and no doubt are, distinctions that can be drawn in creating school districts and stock law districts, but in each case the proceeding should conform to justice and reason. It is also set forth and contended by the appellants that under section 108, chapter 283, Laws of 1924 (section 8743, Hemingway's 1927 Code), a petition could not be entertained to add the territory without a petition also being filed signed by a majority of the school patrons of the consolidated school district. No objections have been raised to the legislative power to thus delegate to the citizens of the school district the permanent power to control the boundaries of the district regardless of changing conditions and necessities and the wishes and desires of the public authorities in regard thereto. Treating the section as valid, we think that this petition should also have been on file before the board at the time the election was ordered on the original petition filed. It may not be necessary for this petition to precede the petition of the citizens in adjacent territory, but the two sections are to be construed together as a harmonious scheme, and, before an election was ordered, both petitions should have been on file. Why put the county to the expense of an election when it would be a fruitless proceeding? If the patrons of the school within the consolidated district refuse to permit the annexation to be

made, it would be necessary for the boundaries to be changed for the annexation to be made. The boundaries of the consolidated district would be considerably different from what they now are with the proposed annexed territory. Therefore, it appears that both petitions should have been filed before the election was ordered.

Some argument is made as to who is a school patron within the meaning of the provisions of sections 108 and 110, chapter 283, Laws of 1924 (sections 8743 and 8745, Hemingway's 1927 Code). We are of the opinion that parents having children living with them in the district who are entitled to attend the public schools and have not finished the course of study therein are patrons of such school. Under other provisions of the school law a pupil cannot attend school outside of the limits of the school district without the consent of the trustees of both schools, that is, of the district in which he lives and of the district of the school in which he proposes to attend. This attending out of the school district is, therefore, in the nature of a privilege and not a right. The parent of such child is a patron of the school of his district, although the child is not actually attending the school where he is entitled to attend school and has not finished the course of study carried by the school. In the present case some of the persons having children under the age of twenty-one years living with them had such children in high schools; they having completed the grammar schools and no high schools being maintained in that school district, such parents are not patrons within the purview of said sections. These sections deal with the boundaries and formation of school districts and vitally affect the right of the children of the territory involved and the parents of such children, and it was the legislative intent in using the word "patrons" that the parents of the children living in the district entitled to attend schools thereof are patrons of the schools for such purposes.

It follows from what we have said that the circuit court was in error, and the judgment of the circuit court will be reversed and the proceeding dismissed.

Reversed and dismissed.