BOARD OF EDUCATION OF BENTON COUNTY, MISSISSIPPI *v.*
STATE EDUCATIONAL FINANCE COMMISSION, et al.

No. 42218 March 5, 1962 138 So. 2d 912

784

*John B. Farese,* Ashland; *Robert B. Smith, III,* Ripley, for appellants, Board of Education of Benton County, Mississippi.

*Overstreet, Kuykendall, Perry & Phillips,* Jackson, for appellee, State Educational Finance Commission.

L. G. *Fant, Jr.,* Holly Springs, for H. V. Gurley and others.

RODGERS, J.

This controversy originated before the Board of Education of Benton County, Mississippi, where two orders were entered on application of certain children and their parents, residents of Benton County, asking to be transferred to Potts Camp Attendance Center in Marshall County. The school board entered separate orders denying the application of these children and the petitioners filed an appeal to the State Educational Finance Commission, hereinafter called "Finance Commission." An order was entered setting the date for a hearing before the Finance Commission, de novo. Notice was given to the respective parties, advising them of the time and place fixed for the hearing. After the hearing, the Finance Commission entered an order sustaining the application and petition of the children and their parents permitting a transfer from Benton County to the Potts Camp attendance Center in Marshall County. No record was made of the testimony given in the hearing before the Finance Commission.

The Commission went into executive session on June 2, 1961, at which time the determination was made to sustain the application of petitioners, but no written order was entered, and the Commission adjourned without having signed the minutes. The order was written on the minutes of June 13, 1961, and a copy sent to the Benton County Board of Education; however, the order was not signed until the next regular meeting of the Finance Commission on the 19th day of June 1961. On the 20th day of June 1961, the attorney for the Benton County Board of Education tendered to the Finance Commission ''a bill of exceptions.'' The Finance Commission rejected a part of the bill but approved other parts. The Board of Education of Benton County made an application to amend the bill of exceptions, but this effort was rejected and overruled by the Finance Commission. The Finance Commission finally approved and signed a bill of exceptions for the purpose of appeal. The Board of Education of Benton County attached this bill of exceptions to the petition asking for the appeal filed in the Chancery Court of Benton County. The Chancellor entered an order permitting the children applicants and their parents to appear in the chancery court as appellees and take part in the hearing on appeal. The children and their parents, hereinafter called ''appellees'', filed a motion in the chancery court asking the court to strike the bill of exceptions and dismiss the case upon the grounds that: (1) The bill of exceptions was not filed before the Finance Commission adjourned its special hearing; (2) the jurisdiction of the chancery court is wholly appellate, and in the absence of a transcribed record or a proper ''bill of exceptions'', the chancery court could not entertain an appeal; (3) the transfer of students by the Finance Commission was effected under the authority of Chap. 296, Laws of 1960, which provides that the hearing before the Finance Commis-

sion shall be de novo, and further that the decision of the Finance Commission is final; and (4) that the foregoing law was passed by the Legislature after Section 6246-12, Miss. Code 1942, and by implication repeals the prior section.

The chancellor overruled the motion of the appellees, and also a motion of the Finance Commission, holding that there was an appeal to the chancery court from the orders of the Finance Commission. The chancellor also held that on appeal the chancery court could only determine: (1) whether or not the order of the Finance Commission was supported by substantial evidence; (2) whether or not the order of the Finance Commission was arbitrary or capricious; (3) whether or not the order went beyond the power of the Finance Commission; and (4) whether or not the order violated some statutory or constitutional right of the parties.

The Board of Education of Benton County, Mississippi, has appealed from the decree of the Chancery Court of Benton County to this Court. The following issues are presented for determination by this Court on appeal in this case: (1), whether or not the law permits an appeal from the Finance Commission; (2) and if there is a right of appeal, whether or not the "bill of exceptions" filed with the Finance Commission was filed in time to perfect an appeal; (3) if there were an appeal under Sec. 6246-12, has the enactment of Chap. 296, Laws of 1960, Sec. 6248-07, Miss. Code 1942, repealed the original right of appeal by implication; (4) whether or not the right of an appeal from the orders of the Finance Commission is in violation of Sec. 1, Art. 1, Miss. Constitution of 1890; (5) whether or not Sec. 6248-07, Miss. Code 1942, Rec., granting an appeal to the Finance Commission violates Sec. 90 (p), Miss. Constitution 1890; and (6) whether or not the "bill of exceptions" states facts sufficiently to warrant

the Supreme Court to reverse the findings of the Finance Commission.

At the threshold of this case, we are confronted with the determination of the various motions filed by the appellees and the Finance Commission, challenging the jurisdiction of the chancery court, and the Supreme Court on appeal, and we feel that they should be disposed of in the beginning of this opinion, not in separate opinions, because (as will appear later) we have treated them as if they were assignments of error.

I.

## MOTION OF STATE FINANCE COMMISSION.

The first motion is that of the Finance Commission, wherein they argue that the order entered by the Finance Commission on appeal to it by the Board of Education of Benton County is final, because (a) an appeal to the courts is not a right but a statutory privilege —an appeal must be based upon a statute granting an appeal and that in this case there is no such statute; (b) the Finance Commission points out that there is no appeal to the chancery court and thence to the Supreme Court because the section granting an appeal .(Sec. 6246-12, supra, has been repealed by implication) because Sec. 6248-07, Miss. Code 1942, Rec., as amended by Chap. 296, Laws 1960, contains the following language: ''In case the two (2) Boards are unable to agree or in case there is a popular objection to the decision of the respective boards in the matter, appeals shall lie to the state educational finance commission *whose decision shall be final''*, (Emphasis supplied.) which is alleged to prevent an appeal to the courts.

This Court pointed out in the case of Adams County Mississippi Board of Education v. State Educational Finance Commission of Mississippi, 229 Miss. 566, 91 So. 2d 524, that ''This appeal is authorized by Sec. 12

(c) of Chapter 11, Laws of Mississippi, Extraordinary Session 1953''; and this is the same section (Sec. 6246-12, Miss. Code 1942, Rec.) on which an appeal was granted in the case at bar, and in our opinion settles the question of appeal in this case. This Court has from time to time found it necessary to advise school authorities acting in a legislative capacity that the phrase ''The Board's decision shall be final'' does not mean that the parties involved in school disputes are prevented from having their day in court. In the case of Hobbs, et al. v. Germany, et al., 49 So. 516 (Miss. 1909), a child was expelled from school by the trustees under a rule requiring all pupils of the school to remain at their homes and study between designated hours in the evening. The Court said: ''The sole question presented by the record is as to the power of the school authorities to make and enforce this rule. The first contention is that the chancery court is without jurisdiction to entertain this proceeding, * * * And again section 4487 provides: 'The board of education shall decide all appeals from decisions of county superintendents, or from the decisions of the state superintendent; * * *' It is argued that under these two sections all controversies which in any way involve any question connected with the government of the schools must be first submitted to the county superintendent, and from his decision an appeal can be taken to the state board of education; but, where the state board of education decides it, *the decision is final.* * * *'' (Emphasis supplied.) Thereupon, the Court held, as follows: ''Whenever a question arises as to whether or not the power of the school authorities to make a certain rule or regulation is reasonably within the scope of the power conferred on them by law, the question is undoubtedly subject to inquiry by the courts.'' This case is in point as to the finality of the orders of school authorities.

In the case of Moreau, et al., School Trustees v. Grandich, et ux, 114 Miss. 560, 75 So. 434, the Court pointed out that an appeal under the school laws is not a judicial determination; that trustees are administrative bodies and are not judicial officers and do not exercise judicial functions; and while appeals lie from the decision of the trustees to the county superintendent, and from the superintendent to the state board of education, these appeals deal with administrative matters and do not constitute res judicata.

██ ██ It is a general rule of law, the Legislature will not delegate the power to decide legal questions to administrative officers. 12 Am. Jur., Constitutional Law, Sec. 576, p. 272; People of the State of Illinois v. Belcastro, 92 A.L.R. 1223. In the case of McCulloch, et al. v. Stone, Auditor, 64 Miss. 378, 8 So. 236, where a petition was filed seeking a writ of mandamus requiring the auditor to give the petitioners a deed, the auditor refused on the ground that his decision in the matter was final. The Court pointed out in its opinion that this was a legal question, depending upon the construction of statutes, and it was a question for the courts.

██ ██ In the case of Walters v. Blackledge, 220 Miss. 485, 71 So. 2d 433, it was said: "This Court has long since recognized that the Legislature may constitutionally create administrative agencies and confer upon such agencies fact finding and quasi-judicial powers, the exercise of which is subject to judicial review", citing Western Union Tel. Company v. Miss. Railroad Commission, 74 Miss. 80, 21 So. 15; Dixie Greyhound Lines v. Miss. Public Service Commission, 190 Miss. 704, 200 So. 579, 1 So. 2d 489. The phrase "whose decision shall be final", does not mean that there can be no appeal to the courts. It means that the matter is final insofar as action of school authorities is concerned.

We are therefore of the opinion that Sec. 6246-12, Miss. Code 1942, Rec., gives the parties a clear right of

appeal to the chancery court from the decision of the Finance Commission.

The claim on the part of appellees that the foregoing Sec. 6246-12 was repealed by implication is based upon the fact that Chap. 11, Laws 1953, created the State Educational Finance Commission effective December 28, 1953, and Chap. 14 with reference to the transfer of children from one district to another also became effective on that date; and moreover this was an amendment of Chap. 25, Laws 1925, giving the children and parents a right to appeal to the State Educational Finance Commission, and it is claimed that such appeal was final. It was further argued that this chapter permitting transfer was amended by Chap. 296, Laws 1960, which provides for an appeal to the Finance Commission and it also provides that the decision of the State Educational Finance Commission is final. It is therefore argued that because the 1954 and 1960 acts were enacted by the Legislature subsequent to Chap. 11, Laws 1953, it clearly establishes that it was not the intention of the Legislature to permit an appeal to the chancery court.

█ █ It is the duty of this Court to follow the intention of the Legislature in determining whether it repealed one law by enacting another. The textwriters have pointed out this duty, by the language found in 50 Am. Jur., Statutes, Sec. 535, p. 541, as follows: "* * * one statute will not be held to repeal another by implication unless it appears, from the terms and provisions of the later act, that it was the intention of the legislature to enact a new law in the place of the old." It is also pointed out in the same text in Sec. 538, p. 543, that: "Repeals by implication are not favored, and there are many instances in which particular statutes are held not to be repealed by implication. As a general rule, the legislature, when it intends to repeal a statute may be expected to do so in express terms or

by the use of words which are equivalent to an express repeal, and an intent to repeal by implication, to be effective, must appear clearly, manifestly, and with cogent force. * * * The courts will not hold to a repeal if they can find reasonable ground to hold to the contrary; * * * See Pons v. State, 49 Miss. 1; Ex Parte McInnis, 98 Miss. 773, 54 So. 260; Seward v. Dogan, 198 Miss. 419, 21 So. 2d 292; In Re Savannah Special Consolidated School District of Pearl River County, 208 Miss. 460, 44 So. 2d 545; U. S. Fidelity and Guaranty Company v. Higdon, Admr., 235 Miss. 385, 109 So. 2d 329; Branton v. O. B. Crittenden & Co., 145 Miss. 531, 111 So. 150.''

██ ██ We are of the opinion, and so hold, that Sec. 6246-12, Miss. Code, Rec., was not repealed by implification because of the subsequent enactment of the abovementioned laws and that this section granting an appeal is now in force, and an appeal may be taken from the State Educational Finance Commission to the chancery court.

The motion of the State Educational Finance Commission to dismiss the appeal is therefore overruled.

## II.

## MOTION OF PARENTS AND CHILDREN.

The parents and children filed a motion in the chancery court asking that the appeal be dismissed, because it is said the hearing on appeal to the Finance Commission was had at a special meeting on the 2nd day of June 1961, the Finance Commission adjourned without putting an order upon the minutes with reference to the hearing, and on the 13th day of June the order of the Finance Commission was reduced to writing and put upon their minutes, and a copy was mailed to the Board of Education of Benton County on that date. The minutes were not signed until the next regular meeting

of the Finance Commission on the 19th day of June 1961. On the next day, the 20th of June 1961, the Board of Education of Benton County tendered a "bill of exceptions" to the Finance Commission, but the Finance Commission did not sign and approve the bill of exceptions until July 17, 1961. The bill was filed appealing the case to the Chancery Court of Benton County on the 19th day of June 1961, to which was attached the various orders and the bill of exceptions tendered the Finance Commission which was later signed.

The appellees, parents and children, cited the case of Gardner v. Price, 197 Miss. 831, 21 So. 2d 1, in support of their contention that the Board of Supervisors could not sign a bill of exceptions after the Board of supervisors had adjourned. This case points out, however, that "We are not to be understood as holding that those acts of the board which were had at the July 1930, meeting would be invalid, where the board had the authority to transact them at the August, 1930, meeting, when the minutes were read, approved and signed at the August meeting. They, however, became effective by such approval and signing as of the August meeting, and from the date of the signing at the August meeting." Merchants & Mfrs. Bank v. State, 200 Miss. 291, 25 So. 2d 585; Wilson v. Eckles, 232 Miss. 577, 99 So. 2d 846.

Sec. 6246-12, Miss. Code 1942, Rec., granting an appeal contains the following language: "In perfecting any appeal provided by this act, the provisions of law respecting notice to the reporter and the allowance of bills of exceptions, now or hereafter in force respecting appeals from the chancery court to the supreme court shall be applicable; provided, however, that the reporter shall transcribe his notes and file the transcript of the record with the commission within thirty (30) days after approval of the appeal bond." The language in the above section refers to Sec. 1313, Miss. Code 1942,

Rec., which contains the following language: ``* * * and all the provisions of law applicable to obtaining bills of exceptions in a circuit court shall apply to a chancery court.'' Sec. 1533, Miss. Code 1942, Rec., granting an appeal in a ``bill of exceptions'' contains the following language: ``* * * and bills of exceptions to judgments overruling motions for new trials must be presented to the judge for his signature during the term or within ten days, or such further time, not exceeding sixty days, as the court may allow, after the end of the term, and must be signed promptly by him if found to be correct; * * *''

■■ ■ The special hearing before the Finance Commission held in vacation between terms was not recorded by a stenographer as it should have been; nor was the order written upon the minutes of the Finance Commission until later when the Finance Commission was not in session, and it could not be signed until the next regular term. When the order had been reduced to writing and was signed on the 19th of June 1961, the appellant Benton County School Board promptly tendered its bill of exceptions on the 20th of June 1961, well within the time granted to the appellee to tender a bill of exceptions under Sec. 6246-12 (a), Miss. Code 1942, Rec. We are therefore of the opinion, and so hold, that the motion in the chancery court and the motion of the appellee parents and children filed in this Court, with reference to the bill of exceptions should have been overruled in the chancery court and is hereby overruled. See May v. Layton, 213 Miss. 129, 55 So. 2d 460.

### III.

Appellees, parents and children, raise an additional issue in the foregoing motion to dismiss, by arguing that the order entered by the Finance Commission is neither a judicial order nor a quasi-judicial order, but is legislative in character, and under Sec. 1, Art. 1, Miss.

Constitution 1890, an appeal cannot be taken from one department of government to another, and that Sec. 6246-12, supra, is therefore unconstitutional.

The case of Moreau, et al. v. Grandich, et ux, supra, contains the following language: "Under sections 1 and 2 of our Constitution, separating the powers of government into Legislative, Executive, and Judicial Departments, persons in one department of government cannot exercise the powers of any other department of the government, and there is no provision in reference to school trustees that modifies these provisions. There are many cases where proceedings before administrative bodies are analogous to proceedings in courts. They frequently hear and determine facts, but their findings and judgments have no conclusive effect and do not constitute res adjudicata. * * * its finding is not a judicial determination and does not preclude the courts from determining these facts."

In the case of Illinois Central R. R. Company v. Dodd, et al., 105 Miss. 23, 61 So. 743, the Court, quoting from Western Union Telegraph Company v. Railroad Commission, 74 Miss. 80, 21 So. 15, said: " '* * * the findings and determination of matters committed to the Railroad Commission by it are not final and conclusive, and were never so intended by the statute. It is an administrative agency, although, in some respects, it exercises quasi judicial power. But at last the reasonableness and consequently the lawfulness of its determination is left subject to judicial inquiry and decision'."

In the case of Pegram v. West Hatchie and Owl Creek Drainage District, 108 Miss. 793, 67 So. 453, where the question, whether or not the Legislature had the authority to establish a drainage district court with administrative authority was at issue, the Supreme Court said: "It was not the purpose of the Legislature to make the board of commissioners a court in the strict definition of the term; that is, a tribunal established

for the public administration of justice and for the hearing and decision of cases. It is true that the board is given certain powers which are judicial, but the chief purpose for the establishment of the board and the larger part of their duties and functions are of an administrative nature. * * * If we say that the board is a court of record because it has been so denominated in the act, then the establishment of the board is authorized by section 172 of the Mississippi Constitution; for, if a court, then it is an inferior court. It has limited and restricted jurisdiction. Its findings and determinations are not final and conclusive, and are subject to review or correction of a higher court under the very provision of the act for appeal from its orders or decisions to the chancery court."

It is apparent that whether we say the Educational Finance Commission is quasi-judicial or administrative in character, an appeal by the County Board of Education or Board of Trustees of a Municipal Separate School District will lie under the authority of Sec. 6246-12, supra.

The textwriter has pointed out that there are areas of administrative law when judicial review or administrative action becomes a matter of necessity in the following language: "* * judicial review of administrative action becomes a matter of constitutional necessity in some situations. The necessity of judicial review springs from the American conception of the supremacy of law, — which lodges in the courts inherent authority to determine the constitutionality of statutes and, therefore, the constitutionality of the exercise of legislative power delegated by the legislature to administrative agencies, and to enforce constitutional rights, — and from the concept of separation of powers as a principle of constitutional law. There are certain matters the determination of which the legislature cannot constitutionally leave to administrative authorities, even though

the enabling statute provides an otherwise proper administrative proceeding and adequate judicial review. There are other matters which, while they cannot be validly withdrawn completely from judicial cognizance by the legislature, do not require that all initial determinations of fact as to them be made by the courts themselves in order to maintain the essential attributes of the judicial power." 42 Am. Jur., Public Administrative Law, Sec. 187, pp. 551-552.

"It should be borne in mind that due process of law involves in many instances the right to have a matter in dispute passed upon by a judicial tribunal. Hence, an appeal to a court from the action of a nonjudicial body may be implied in the requirements as to due process of law." 12 Am. Jur., Constitutional Law, Sec. 639, p. 329. See also 42 Am. Jur., Public Administrative Law, Sec. 190, p. 563.

■■■ We are therefore of the opinion that an appeal to the chancery court from the Finance Commission does not violate Secs. 1 and 2 of the Miss. Constitution 1890.

The motion of the appellee, children and parents, asking the Court to dismiss the appeal is hereby overruled.

### IV.

### APPEAL ON THE MERITS.

It appears from the bill of exceptions filed in this case that the Board of Education of Benton County, Mississippi, reorganized all the area and territory in Benton County in compliance with Chap. 12, Laws Ex. Session of Miss. Legislature 1953, into one county-wide school district. All the schools and school districts were abolished and the whole area was incorporated into and became a part of the Benton County School District. The Board of Education provided two attendance centers for white children, one at Hickory Flat, and

the other at Ashland, Mississippi, the county seat. These two attendance centers were designed to serve all of the educable children of Benton County, and both attendance centers consisted of elementary and high schools. Children attending schools out of Benton County were directed to attend one of the two above-named attendance centers, and all of the children who had been attending school in other counties returned to the attendance centers in Benton County, except the petitioning children who are appellees in this case.

Under the law prior to the reorganization abovementioned, the children of a certain area of Benton County had been assigned to, and were attending, Potts Camp Line Consolidated School District at Potts Camp, Marshall County, Mississippi. This consolidated school district in Benton County had been abolished along with the other districts and schools by the reorganization of Benton County into one school district.

The children living in the abolished area of Potts Camp Consolidated School District of Benton County (67 in number) filed applications or petitions with the Board of Education of Benton County, Mississippi, asking that they be allowed to transfer to the Potts Camp Attendance Center in Marshall County. The petitioners were granted a hearing and an order was entered by the Board of Education of Benton County denying the application for transfer, and the order set out the reason for the denial. An appeal was taken to the Finance Commission, as heretofore set out, thence to the Chancery Court of Benton County.

The Legislature of Mississippi met in Extraordinary Session in November 1953 and enacted a sweeping and much-needed reorganization of the school laws of the State of Mississippi. See Secs. 6328-01, et seq., Miss. Code 1942, Rec.

Sec. 7 of the Laws of Ex. Session 1954, Chap. 25, provided for the transfer of students and was in the following language:

"Section 7. Transfer students. — (a) Upon the petition in writing of a parent or guardian, resident of the school district of an individual student filed or lodged with the president or secretary of the board of trustees of a school district in which the pupil has been enrolled or is qualified to be enrolled as a student, or (b) upon the aforesaid petition or the initiative of the board of trustees of a school district as to the transfer of a grade or grades, individual students living in one school district or a grade or grades of a school within the districts may be legally transferred to another school district, by the mutual consent of the boards of trustees of all school districts concerned, said consent to be given in writing and spread upon the minutes of such boards, and with the approval in writing of the county board or boards of education concerned.

The board of trustees of the school district to which such petition may be addressed shall act thereon not later than its next regular meeting subsequent to the filing or lodging of said petition, and a failure to act within said time shall constitute a rejection of such request. The board of trustees of the other school district involved, the transferee board, shall act on such request for transfer as soon as possible after the transferor board shall have approved or rejected such transfer and no later than the next regular meeting of the transferee board, and a failure of such transferee board to act within such time shall constitute a rejection of such request. If such a transfer should be refused by the board of trustees of either school district, then an appeal may be had to the county board of education. The said county board of education to which said appeal is taken shall act thereon not later than the date of its next regular meeting subsequent to the disapprov-

al or failure to act by the board of trustees of said school district, or not later than the date of its next regular meeting subsequent to the filing of such appeal. *In cases involving more than one county, appeals shall lie to the State Educational Finance Commission unless the boards of education of all counties concerned shall approve such transfer."* (Emphasis supplied.)

In 1960, House Bill No. 628, (Sec. 6248-07, Miss. Code 1942, Rec.) the Legislature changed the above Section 7 so as to leave out the following line at the bottom of the second paragraph, to wit: "In cases involving more than one county, appeals shall lie to the State Educational Finance Commission unless the boards of education of all counties concerned shall approve such transfer." In the place where this sentence was eliminated, the following paragraph was added to wit: "In cases involving two (2) counties, each of which is organized on the county-unit basis, where the students residing in one county have been attending and wish to continue attending the school situated in the adjoining county which children from their community have been attending for more than forty (40) years and where the county line lies within one thousand (1,000) yards of the school property, transfers may be granted for a period of time not to exceed five (5) years, subject to the approval of the two (2) respective county boards of education. In case the two (2) boards are unable to agree or in case there is a popular objection to the decision of the respective boards in the matter, appeals shall lie to the state educational finance commission whose decision shall be final."

Sec. 6334-11, Miss. Code 1942, Rec., provides that: "No minor child may enroll in or attend any school except in the school district of his residence, unless such child be lawfully transferred from the school district of his residence to a school in another school district

in accord with the statutes of this state now in effect or which may be hereafter enacted."

Chap. 260, Laws 1954, (Sec. 6334-02, Miss. Code 1942, Rec.) is in the following language: "In making assignments of children to schools or attendance centers as provided in this act, the board of trustees shall take into consideration the educational needs and welfare of the child involved, the welfare and best interest of all the pupils attending the school or schools involved, the availability of school facilities, sanitary conditions and facilities at the school or schools involved, health and moral factors at the school or schools, and in the community involved, and all other factors which the board of trustees may consider pertinent, relevant or material in their effect on the welfare and best interest of the school district and the particular school or schools involved. All such assignments shall be on an individual basis as to the particular child involved and, in making such assignment, the board of trustees shall not be limited or circumscribed by the boundaries of any attendance areas which may have been established by such board of trustees." This section is applicable to trustees of one district and is also applicable to the county school board; because under Chap. 260, Laws 1954, Sec. 6 (Sec. 6334-06, Miss. Code 1942, Rec.), the county board of education acts as the board of trustees of the county-wide school district.

In the case of Myers v. Board of Supervisors of De Soto County, 156 Miss. 251, 125 So. 718 (1930), in a case involving school districts under the law then in force, this Court said: "We are of the opinion that parents having children living with them in the district who are entitled to attend the public schools and have not finished the course of study therein are patrons of such school. Under other provisions of the school law a pupil cannot attend school outside of the limits of the school district without the consent of the trustees of

both schools, that is, of the district in which he lives and of the district of the school in which he proposes to attend.''

 ██ It is therefore clear that children seeking to attend an attendance center outside the school district of their residence as constituted by the school board would be required to submit their application to the board of trustees in the district of their residence, and in this case the board of trustees and the Benton County Board of Education are one and the same board.

It is expressly set out in the above-mentioned Sec. 6248-07, Miss. Code 1942, Rec., that ''Upon a petition in writing of a parent * * * filed or lodged with the president or secretary of the board of trustees of a school district in which the pupil has been enrolled or is qualified to be enrolled * * * may be legally transferred to another school district, by the mutual consent of the boards of trustees of all school districts concerned, said consent to be given in writing and spread upon the minutes of such boards, and with the approval in writing of the county board or boards of education * * * If such a transfer should be refused by the board of trustees of either school district, then an appeal may be had to the county board of education. In cases involving more than one county, appeals shall lie to the State Educational Finance Commission unless the boards of education of all counties concerned shall approve such transfer.''

 ██ In order to have a proper understanding of the law with reference to the transfer of children from one district to another, Sec. 6334-01, et seq., Miss. Code 1942, should be read and considered in connection with Sec. 6248-07, Miss. Code 1942, Rec., and these two sections should be interpreted so as to give effect to the legislative intent expressed in Sec. 6334-02, Miss. Code 1942, Rec.

Sec. 6334-01, et seq., Miss. Code 1942, Rec., deals with the primary assignment of the child to an attendance center, when such child presents himself for enrollment in the public schools of this State. When the parent of a child shall feel aggrieved by the assignment, he may make an application in writing to the trustees for a review of such assignment. (Sec. 6334-03, Miss. Code 1942, Rec.) The parent may then appeal to the county board of education. (Sec. 6334-04, Miss. Code 1942, Rec.) The parent may again appeal to the circuit court under Sec. 6334-05, Miss. Code 1942, Recompiled. Sec. 6334-01 through Sec. 6334-05, Miss. Code 1942, Rec., deals with the assignment of the individual child to attendance centers within the county.

On the other hand, Sec. 6248-07, Miss. Code 1942, Rec. contains the following language: ''In cases where two (2) or more counties are concerned, if one of the county boards of education shall fail to act * * * then an appeal * * * may be had to the state educational finance commission in like manner as hereinbefore set out, and the decision of said commission shall be final.''

 █ It is therefore apparent that when two or more counties are involved the appeal allowed is to the State Finance Commission and thence to the chancery court, but an appeal taken by an individual student from one district within the county to another within the same county is to the county board of education and thence to the circuit court of that county.

Sec. 6334-02, Miss. Code 1942, Rec., requires the trustees to take into consideration not only the educational needs and welfare of the individual child involved but the educational needs and welfare of all of the pupils of the school or schools involved, and for that reason on the appeal to the county board of education and thence to the circuit court, the matter shall be tried de novo. (Sec. 6334-05, Miss. Code 1942, Rec.) The appeal allowed when two counties are involved to the

State Educational Finance Commission is also tried de novo. (Sec. 6248-07, Miss. Code 1942, Rec.) It will be observed, however, that the appeal from the Finance Commission allowed under Sec. 6246-12, Miss. Code 1942, Rec., to the chancery court is not permitted to be tried de novo.

The chancellor on the trial of this case in the court below gave an oral opinion in which he said: "Now, we go into this thing, not as if I were trying it de novo, anew, but we go into it to try it on the proposition of whether or not the State Finance Commission has been capricious and arbitrary, has so mistreated the Hickory Flat School or the school system that it shocks the conscience, or that a Court of Equity should overrule them and make them do the right thing." The chancellor, in his verbal opinion, carefully reviewed the evidence submitted to the Finance Commission as set out in the bill of exceptions and stated: "* * * I could not conscientiously say that their decision was so capricious and arbitrary and so out of reason that it would become my duty as the Chancery Judge to overrule their decision."

This Court used this language in the case of Adams County v. State Educational Finance Commission of Mississippi, 229 Miss. 566, 91 So. 2d 524, as follows: "But whether the State Educational Finance Commission was acting in a purely administrative or legislative capacity, or in a quasi-judicial capacity in the matter of approving or disapproving the order of the county board of education in this case, the Commission was exercising a discretionary power vested in it by the statute, and the power of the court upon appeal is limited to a determination of the question whether the order of the Commission is supported by substantial evidence or is arbitrary and capricious, and whether the order went beyond the power of the Commission to make, or violates some statutory or constitutional

right of an interested party.'' We think the chancellor
was correct in holding that he should determine the
appeal in this case in the light of the Adams case,
supra. See 42 Am. Jur., Public Administrative Law,
Sec. 209, p. 610; Board of Supervisors Clay County v.
McCormick, et al., 207 Miss. 216, 42 So. 2d 177.

██ ██ We have carefully examined the opinion and
decree of the trial court, and we do not find reversible
error in any of the matters submitted to the chancellor
with reference to the order of the Finance Commission.
We have examined the evidence submitted by the bill of
exceptions, and we agree with the chancellor that there
is sufficient substantial evidence in the bill of exceptions
filed in this case to sustain and justify the order of
the Finance Commission, and that the findings of the
Finance Commission are sufficient to sustain an appeal.

### V.

The assignment of errors filed by the Board of Edu-
cation of Benton County raises on appeal for the first
time the following constitutional issue: ''That Chapter
296, Laws 1960, which appears as Section 6248-07, Mis-
sissippi Code 1942, Recompiled, is unconstitutional in
that it violates the provisions of Section 90, Mississippi
Constitution of 1890.''

Sect. 90 (p), Mississippi Constitution 1890, is as fol-
lows: ''The legislature shall not pass local, private, or
special laws in any of the following enumerated cases,
but such matters shall be provided for only by general
laws, viz.: * * * (p) Providing for the management
or support of any private or common school, incorporat-
ing the same, or granting such school any privileges;
* * *,,

The appellant Benton County Board of Education
presents the following question: ''Is Chapter 296, Laws
1960, appearing as Section 6248-07, Mississippi Code
1942, Recompiled, a general law or a local, private or

special law, prohibited by Section 90 (p) of the Mississippi Constitution of 1890?''

The argument of the Benton County Board of Education attacking the validity of Sec. 6248-07, Miss. Code 1942, Rec. as unconstitutional is based on the amendment made to the original law by Chap. 296, Laws 1960, (heretofore set out in the eighth paragraph of IV.) Appellant Benton County Board of Education argues that Sec. 6248-07, supra, as amended, is a special or private act in the following particulars: (1) It unconstitutionally limits the right of appeal to an arbitrary or unreasonable class, and (2) its terms give the Educational Finance Commission the power to grant a transfer for five years to an unconstitutionally limited class of pupils.

It is argued that the amendment excludes every educable child living in a county which is not organized under a ''county unit'' system, and the case of Scarbrough v. McAdams Consolidated School District, 124 Miss. 844, 87 So. 140, is cited as authority to sustain this argument. The Legislature used the following language in the Scarbrough case: ''An act authorizing the board of supervisors of Attala County, Mississippi, to issue bonds for the purpose of building and equipping an agricultural high school in the McAdams consolidated school district.'' Thus, it is seen, the school is named, and the benefits are for no other school. It was therefore clearly in conflict with Sec. 90 (p) of the Constitution.

In the case of Williamson, County Superintendent v. Howell, 155 Miss. 220, 124 So. 319, the Court said: ''The local and private act above quoted undertook to confer upon this particular school special privileges, * * *'' This was a local and private statute enacted for the express purpose of giving the trustees of Arnold Line School District, the right to transfer certain children at the expense of certain school funds, and it was clearly in violation of the Constitution.

It is argued that the transfer of children under the amendment for a period of five years is a special privilege and is violative of the Constitution, but it appears to this Court that the Legislature had a clear concept of the school problems of this State; because it gave the Finance Commission the duty to determine whether children should be transferred for a period of not to exceed five years from one county to another. In cases where there are two county school boards involved, they may not be able to examine the school problem objectively, and without bias as to the interest of the other county. The Educational Finance Commission, holding its deliberations in the State Capitol, is removed from the emotional surroundings usually involved in uprooting school children and transporting them to new and strange attendance centers. It would therefore seem logical to consider that the Legislature had good reason to permit the Educational Finance Commission (when more than one county is involved) to exercise the authority to allow a little more time for the students to become adjusted than would be necessary in moving an individual child from one school near home to another attendance center nearby.

The question that caused this Court to ask for additional briefs on the constitutionality of the amendment was whether or not the over-all amendment was so restrictive by its terms as to be an unreasonable classification, in the guise of a general law — and thus in truth and in fact be a local and private act, granting special privileges to those schools who came within the classification.

The appellant Benton County Board of Education has cited the case of Toombs, Prosecuting Attorney v. Sharkey, et al., Board of Supervisors, 140 Miss. 676, 106 So. 273, as authority, pointing out a similar law enacted by the Legislature which provided greater compensation for prosecuting attorneys in counties having

an assessed valuation of $25,000,000 or more, and being in a district where a cotton tax is imposed for levee purposes. The Court held that the Legislature was not warranted in making an arbitrary and indiscriminate classification without regard to its relation to the thing to be effected. The classification must be germane to the subject-matter. Thus, it is apparent that this case does not aid us, since a cotton tax has little to do with the salary of the prosecuting attorney. In the amendment above set out, the transfer of students, their right of appeal, and the length of time the transfer is allowed, is certainly germane to schools and school districts. Therefore the Toombs case, supra, does not aid us.

In the case of Culley v. Pearl River Industrial Commission, 234 Miss. 788, 108 So. 2d 390, this Court said: "* * * And a law is general and uniform if it operates on every person who is brought within a valid classification. The facts show that the Pearl River is in a unique position in this respect. It is capable of serving a large proportion of the State's population, and, under the geological, health, industrial, recreational, and water-supply facts pertinent to it, the Pearl River presents a situation which justifies the classification made by the Legislature in Senate Bill 1724. * * *"

The appellant Benton County Board of Education has invited the attention of this Court to the Mississippi Legislative House Journal of 1960 at page 388 in order to prove that the amendment here complained of was introduced by three representatives from Marshall County, Mr. Ash, Mrs. Slayden and Mr. Owen. It is further stated that the Court should take judicial knowledge of the enactment and says: "There can be no question, but that this proviso was inserted for the sole and express purpose of taking care of the Potts Camp situation." This may well be true, but this Court has no right to assume such facts. The burden is upon one who attacks the constitutionality of a statute to

show wherein it conflicts with the Constitution. We find the foregoing rule expressed in 11 Am. Jur., Constitutional Law, Sec. 132, p. 796, as follows: "With regard to the duties cast upon the assailant of a legislative enactment, the rule is fixed that a party who alleges the unconstitutionality of a statute normally has the burden of substantiating his claim and must overcome the strong presumption in favor of its validity. It has been said that the party who wishes to pronounce a law unconstitutional takes on himself the burden of proving this conclusion beyond all doubt, and that a party who asserts that the legislature has usurped power or has violated the Constitution must affirmatively and clearly establish his position."

In the case of State, ex rel., Jordan, District Attorney v. Gilmer Grocery Co., 156 Miss. 99, 125 So. 710, at p. 714, this Court said: "Our own Court is committed to the proposition that a statute should be so construed as to render it constitutional, if possible, and a statute will not be declared invalid unless it is clearly apparent that it conflicts with the organic law after resolving all doubts in favor of its validity."

 It was also pointed out in State, ex rel., Knox, Attorney General v. Speakes, et al., 144 Miss. 125, 109 So. 129, that where the meaning of a provision in a statute is not ascertainable from the act itself, it cannot be enforced by the courts, and certainly courts cannot go outside of the amendment of 1960 in this case, and the record, to find some meaning by which the amendment may be declared unconstitutional.

We are reminded by the language set out in 16 C. J. S., Constitutional Law, Sec. 151 (1), p. 738, that: "The power of the judiciary in determining the constitutionality of a statute is limited to deciding whether it is within the scope of the constitutional powers of the legislative department. The judiciary will interfere with acts of the legislative body only where they are beyond the

bounds prescribed by the constitution, and a legislative usurpation of power should be clear, palpable, or oppressive, and the claimed infringement of the constitution must be real to justify interposition. Limitations on the power of the legislature which the people have been satisfied to leave to the judgment, patriotism, and sense of justice of the legislature are not within the control of the courts. It is for the legislature and not for the courts to determine what means shall be employed to accomplish ends within its constitutional powers, * * *,"

▆▆ ▆▆ The question of reasonable classification is a question primarily for the Legislature. 16A C. J. S., Constitutional Law, Sec. 489, p. 247, is in the following language: ▆▆ ▆▆ "In determining whether or not a basis of classification is reasonable, it must be looked at from the standpoint of the legislature enacting it, and with reference to the cōnditions existing when the statute was enacted, not when the constitution was adopted. As discussed supra, Sec. 151 (4), the question of classification is one primarily for the legislature, and in the exercise of this power the legislature possesses a wide discretion. ▆▆ ▆▆ A statute will be sustained where the basis for classification made by it could have seemed reasonable to the legislature, even though such basis seems to the courts to be unreasonable. In view of the presumptions in favor of a legislative classification, as discussed supra Sec. 100, the legislative judgment as to classification will be upheld if any state of facts can reasonably be conceived to sustain it, and can be overthrown by the courts only when it is clearly erroneous."

This Court has adopted the foregoing rule. See State, ex rel., Patterson, Attorney General v. Land, 231 Miss. 529, 95 So. 2d 764; Stone, Chairman, State Tax Commission v. General Electric Contracts Corporation, 193 Miss. 317, 7 So. 2d 811.

We have carefully reviewed the evidence presented by the bill of exceptions, with reference to the economic problem, particularly the obvious loss of teachers to Benton County. The Members of this Court, like the Chancery Judge, are sympathetic with the school authorities who are required to deal with the emotional and economic problems confronting the redistricting of schools. This Court is not permitted to pass upon the wisdom of a legislative act. See 11 Am. Jur., Constitutional Law, Sec. 138, p. 804. The justice or injustice of a legislative act is also a question for the determination of the Legislature. This is pointed out by the textwriter of 11 Am. Jur., Constitutional Law, Sec. 137, p. 804, in the following language: "Legislative acts within the power of the legislative body are not subject to revision or control by the courts on the ground of absurdity, injustice, or like impropriety, because they are contrary to the principles of natural justice, are based on conceptions of morality with which the courts may disagree, or even because they create unjust differences not prohibited by the Constitution."

We have come to the conclusion, and so hold, that Chap. 296, Laws 1960, which appears as Sec. 6248-07, Miss. Code 1942, Rec., is not unconstitutional, and therefore this case should be, and is, affirmed on direct and cross-appeals.

Affirmed on direct and cross-appeals.

All Justices concur.