# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CC-00035-SCT

*PASCAGOULA MUNICIPAL SEPARATE SCHOOL DISTRICT*

*v.*

*W. HARVEY BARTON AND RENEE BARTON, AS PARENTS AND NEXT FRIENDS OF WILLIAM GENTRY BARTON, A MINOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/03/1999 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RAYMOND L. BROWN |
| | A. KELLY SESSOMS, III |
| ATTORNEY FOR APPELLEES: | SKIP EDWARD LYNCH |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 02/01/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/22/2001 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. The Pascagoula Municipal Separate School District appeals the Jackson County Circuit Court's decision ordering the transfer of a student from his current elementary school to his sister's school when a space becomes available.

## FACTS

¶2. Harvey and Renee Barton registered their son Gentry with the Pascagoula Municipal Separate School District (the District) in July, 1999. The District assigned Gentry to Eastlawn Elementary. The Bartons requested that Gentry be transferred "in-district" to Beach Elementary, where his sister attends. The District denied the transfer request on the grounds that no space was available at Beach Elementary at the time of the request. The Bartons assert that the District failed to give effect to a policy adopted May 19, 1998, allowing a child to transfer from one school to another if the child's sibling attends the latter school. The District contends that this policy applied only to middle-school students.

¶3. The Bartons appeared before the school board and requested reconsideration of the denial of Gentry's transfer. The request was again denied. The Bartons then sought a temporary restraining order and preliminary injunction to prevent the school from denying Gentry's transfer. The chancellor denied the T.R.O. and the requested injunctive relief. The Bartons then filed a circuit court appeal which was dismissed without prejudice to allow a supplemental school board hearing where the Bartons could present additional evidence. Following this hearing, the Bartons appealed once again to the circuit court.

¶4. The circuit court entered judgment on December 3, 1999. The judge ruled that at the time of the denial of the transfer request, the school board's decision was not arbitrary and capricious. He further found that the board's reasons for denial were temporary and that a denial when space becomes available would be arbitrary and capricious. The court, therefore, rendered a judgment allowing Gentry's transfer when space allows. Aggrieved by the court's decision to allow Gentry's ultimate transfer, the District timely perfected this appeal.

## STANDARD OF REVIEW

¶5. A circuit court sitting as an appellate court reviewing a decision of a county school board may not substitute its judgment for the judgment and discretion of the administrative agency on facts introduced. *County Bd. of Educ. v. Parents & Custodians of Students at Rienzi Sch. Attendance Ctr.*, 251 Miss. 195, 208, 168 So. 2d 814, 819 (Miss. 1964). The court must determine whether or not the action of the school board was arbitrary and capricious, unreasonable, or constituted an abuse of discretion. *Id.* The court must sustain the legal action of the agency if that action is based on substantial evidence. *Id.*

## ANALYSIS

### WHETHER THE CIRCUIT COURT ERRED BY ORDERING THE PASCAGOULA MUNICIPAL SEPARATE SCHOOL DISTRICT TO TRANSFER GENTRY BARTON TO BEACH ELEMENTARY SCHOOL AS SOON AS SPACE PERMITS.

#### Whether the circuit court's ruling amounts to an improper grant of mandamus relief.

¶6. The District asserts that the circuit court exceeded its scope of review of an administrative agency's decision by ordering that Gentry Barton be transferred from Eastlawn to Beach Elementary as soon as the next slot becomes available. The District argues that since the court found its action in denying the transfer to be based on substantial evidence and not arbitrary and capricious, the court cannot justify ordering the transfer as soon as space permits. The District argues that "[w]hat the court has done by granting the next slot available is essentially a form of mandamus relief which was not requested nor pled."

¶7. The Bartons contend that space availability was the only legitimate reason the school board presented in denying Gentry's request and that such a reason is of a temporary nature. The Bartons assert that no action was brought pursuant to a writ of mandamus and that mandamus has never been an issue in this matter.

¶8. In support of its argument that the circuit court improperly granted mandamus relief, the District cites three cases. In *Ladner v. Deposit Guar. Nat'l Bank*, 290 So. 2d 263, 267 (Miss. 1973), we stated that "if an administrative officer has discretion in a matter, mandamus may compel the officer to act, but may not control or dictate his discretion for a desired result." In *Hinds County Democratic Executive Comm. v. Muirhead*, 259 So. 2d 692, 695 (Miss. 1972), we discussed the rule concerning mandamus:

> It is not within the purposes of a writ of mandamus to direct an inferior tribunal to decide an issue of fact in a particular way, when the law has invested that tribunal with original jurisdiction to decide the question for itself. If this were not the rule, the determination of issues of fact, although committed to many different officers and boards in the first instance, would be only advisory to the courts, and local government of all grades would or could be absorbed by, and transferred to, the courts.

*Id.* (citing *City of Jackson v. McPherson*, 158 Miss. 152, 155, 130 So. 287, 288 (1930)). The District

argues that the court's order directing that Gentry be granted the next available slot usurps the administrative functions of the school board in assigning and approving transfers of students. According to the District's argument, the court may not interfere with the discretion of a school board in this manner by way of "mandamus-*type*" relief.

¶9. Whether the circuit court's ruling is an improper grant of "mandamus-type" relief becomes a question of semantics. The District would interpret the judgment as follows: that the circuit court correctly held the District's action to be neither arbitrary and capricious but then acted contrary to that finding and ordered Gentry's transfer as soon as a slot becomes available. The Bartons would read the judgment as follows: that the circuit court found the *temporary* denial of Gentry's transfer request to be neither arbitrary or capricious but found the *permanent* denial to be arbitrary and capricious. Both readings of the judgment are essentially the same, but the former sounds like mandamus while the latter appears to be the result of a legitimate review of an agency decision.

¶10. Further, the cases cited by the District are not applicable to the case sub judice. ***Ladner***, ***Muirhead***, and ***McPherson*** each involved actual writs of mandamus against governmental agencies. The case sub judice involves a direct appeal from a school board's decision pursuant to Miss. Code Ann. § 37-15-21(1996) and is not a mandamus action. While the cases cited do outline the limits of a court's authority in actual mandamus actions, they do not offer insight into the District's theory regarding "mandamus-*type*" relief. In fact, the District has failed to cite any authority in furtherance of its proposition that a court's actions may be characterized as "mandamus-*type*" or "constructive mandamus" relief. We find this argument to be without merit.

¶11. Furthermore, even accepting the District's position that the circuit court's judgment amounts to some form of mandamus, the District has not shown that the circuit court acted improperly. The District asserts that the circuit court, sitting as an appellate court, does not have the authority to "encroach upon the administrative powers of the District in telling the District that it has to transfer William Gentry Barton . . . once a slot becomes available at Beach Elementary." Our case law, however, contains many examples of an appellate court modifying an agency decision and mandating a result. In ***Richmond v. Mississippi Dep't of Human Servs.***, 745 So. 2d 254, 257 (Miss. 1999), we found the agency's decision to terminate an employee to be arbitrary and capricious and mandated the imposition of an appropriate penalty less than dismissal or, alternatively, the accumulation of detailed findings on the record why no penalty should be imposed. *See also* ***Burns v. Public Employees Ret. Sys.***, 748 So. 2d 181, 183 (Miss.Ct.App. 1999) (finding an agency's denial of disability benefits to be arbitrary and capricious and mandating that the Public Employees Retirement System of Mississippi conduct "a neutral and unbiased review of [the claimant's] disability claim"). Thus, contrary to the District's assertions, an appellate court may modify an agency decision and mandate a result. Again, we reject the District's "mandamus" arguments.

### Whether the District's assignment and transfer policy complies with Miss. Code Ann. § 37-15-15.

¶12. The District asserts that its policy and its refusal of Gentry's transfer comply with Miss. Code Ann. § 37-15-15(1996). That section states:

> In making assignments of children to schools or attendance centers, the school board shall take into consideration the educational needs and welfare of the child involved, the welfare and best interest of all the pupils attending the school or schools involved, the availability of school facilities, sanitary

conditions and facilities at the school or schools involved, health and moral factors at the school or schools, and in the community involved, and all other factors which the school board may consider pertinent, relevant or material in their effect on the welfare and best interest of the school district and the particular school or schools involved. All such assignments shall be on an individual basis as to the particular child involved and, in making such assignment, the school board shall not be limited or circumscribed by the boundaries of any attendance areas which may have been established by such board.

The District asserts that nothing in this section or in the District's assignment and transfer policy guarantees sibling assignments. The District correctly notes that the statute does not outlaw the creation of attendance zones.

¶13. The Bartons assert that the District failed to comply with Miss. Code Ann. § 37-15-15 by basing its assignment of Gentry solely on his residence. The statute directs school districts to make assignments on an individual basis and to consider the various factors listed. The school district superintendent, Dr. David Snowden, revealed the District's failure to comply with the statute in his testimony:

Q: This is an assignment of Gentry to Eastlawn, preventing a transfer; correct?

A: That's correct.

Q: But what you're essentially doing here is creating attendance zones, are you not? You're trying to create attendance zones where these people go to this school -

A: That's correct.

Q: - and these people go to that school. And that's the only basis that Gentry is going to Eastlawn, because you say he lives in Eastlawn. There's no other reason; correct?

A: That's correct.

Q: So you're not taking into consideration the particular child involved. You're taking into consideration where his parents live?

A: That's correct.

According to Snowden's testimony, the District failed to review Gentry's assignment and transfer request on an individual basis as the statute directs. The testimony revealed that Gentry's particular interest was not considered. Snowden clearly stated that the decision to place Gentry in Eastlawn Elementary and to keep him there was based totally on his residence within that attendance zone.

¶14. In direct conflict with Snowden's testimony was the testimony of Dr. Gary Tierce, the District's director of student services. Tierce testified that part of his position is to enroll and assign students. According to Tierce, he complied with the assignment policy of the District and considered the particular needs of Gentry Barton in making his assignment determinations. The District's policy calls for the review of six criteria per assignment. Those criteria are as follows:

1. Educational programs to be offered in each school.

2. Space available in each school.

3. Maintaining approximately the same minority to majority racial ratio in each school as that of the entire district.

4. Projected enrollment of the district by grades.

5. Acceptable teacher-pupil ratio for accreditation and state law.

6. Minimum bus transportation requirements for those students eligible for public transportation.

Tierce further testified that he considered Miss. Code Ann. § 37-15-15 in making his determination.

¶15. The Bartons insist that the District acted contrary to the statute's directive and failed to consider the individual welfare and best interest of Gentry. They have offered a number of reasons for Gentry's transfer. The District asserts that the reasons are not sufficient to warrant the transfer. First, the Bartons assert that Gentry's welfare would best be served by his attending school with his sibling. Second, they argue that Beach Elementary is, in fact, closer to their home than Eastlawn. They assert that the school board has never designated their subdivision, Oakhurst, which is relatively new, to any school zone. The record reveals that the District failed to consider the distance traveled when denying the Bartons' request to transfer Gentry. Third, the Bartons claim difficulty in the logistics of three children attending three different schools. Regarding reasons for Gentry's transfer to Beach Elementary, Renee Barton testified that "his sister is there, and it was going to be really difficult for me to get to three different places; and for his safety, because I didn't want to put him on a bus or anything like that." According to Renee Barton, the school board has never established an adequate bus stop for Oakhurst subdivision. If Gentry, a six-year-old child, rides the bus home, he will be required to walk several hundred yards along busy Washington Avenue, turn south near a bridge which spans a bayou, walk through an apartment complex, around a locked gate, and through the woods to his home which is located on a bayou. Currently, bus transportation is not available at all for the Bartons' daughter, Jillian, who attends Beach Elementary. Thus, Renee Barton must pick up both children at two separate elementary schools which end classes at the same time.

¶16. We have held "traditionally, that the courts will not interfere with the exercise of power vested by the legislature in school boards to create or change boundaries of school districts, or in matters made discretionary with the school boards, except in cases of clear abuse thereof." *County Bd. of Educ. v. Parents & Custodians of Students at Rienzi Sch. Attendance Ctr.*, 251 Miss. 195, 208, 168 So. 2d 814, 818 (Miss. 1964). The Fifth Circuit has held that school boards are vested with broad discretion in pupil assignments. *Darville v. Dade County Sch. Bd.*, 497 F.2d 1002, 1004 (5th Cir. 1974). Nevertheless, regardless of the discretion allowed the District, regardless of the absence of a policy or statutory guarantee of sibling assignments, and regardless of the merit or lack thereof of the Bartons' reasons for Gentry's transfer, the question remains whether the District complied with the plain language of Miss. Code Ann. § 37-15-15. The District's superintendent made it clear in his testimony that the District did not comply. According to that testimony, none of the arguably compelling reasons offered by the Bartons were taken into account in the District's decision-making process. If, indeed, the assignment of Gentry to Eastlawn and the denial of his transfer request to Beach were based solely on his residence within the Eastlawn attendance zone, the District did not comply. On the other hand, if the testimony of the District's student services director is deemed credible, then the District appears to have complied with the statute. Evidently, the circuit court was convinced that the District made its decision according to the proper

statutory and policy guidelines; for the court found the decision to be neither arbitrary or capricious. An examination of the statute and the criteria listed in the District's policy, however, reaffirms that the circuit court was also correct in its determination that a permanent denial of Gentry's transfer would be arbitrary and capricious. We agree with the circuit court.

### **Whether the District's previously-enacted policies require the granting of Gentry Barton's transfer request.**

¶17. Both the District and the Bartons attempt to use a 1970 school board resolution to back their respective positions. The resolution provides that the assigning of elementary and junior high school students will be accomplished in a manner so that the "ratio of non-white to white students to each school is substantially the same as each such ratio is to the elementary and junior high school students, respectively, in the entire school system." The District asserts that to allow the transfer of Gentry and other non-minority students to Beach Elementary would upset the racial make-up of the school in violation of the 1970 resolution. Tierce, however, testified that the purpose of the school board policy is to effectuate an approximate racial make-up in the entire school, not an exact racial make-up for each school grade or class. Tierce acknowledged that Gentry's individual transfer would not affect the percentages to any harmful degree. Thus, the District's attempt to use the 1970 resolution in furtherance of its position is not persuasive.

¶18. The Bartons rely on the following section of the 1970 resolution: "All children in the same family will be assigned to the same appropriate attendance center insofar as possible. Each child shall travel the least distance necessary to attend such assigned attendance center." Gentry's sister already attends Beach, and it is undisputed that Beach is closer to the Barton home than Eastlawn. When these facts are applied to the language found in the resolution, it appears that Gentry should have been assigned to Beach. It must be noted, however, that the resolution retains the discretionary element of the assignment policy by including the phrase "insofar as possible." Further, the primary purpose of the 1970 resolution was to accomplish desegregation-not to enact a sibling assignment mandate. Thus, ultimately, the 1970 resolution does little to support the arguments of either side of this case.

¶19. The Bartons also complain that a two-year transfer policy, which the District asserts only applies to middle-school students, is incomprehensible and is being applied arbitrarily and capriciously. The policy is reflected in the school board minutes as follows:

> APPROVAL OF REVISION TO POLICY JBCCA-STUDENT ASSIGNMENT AND REASSIGNMENT POLICY
>
> Mr. Marks moved, seconded by Paul, to approve the revision to the student assignment and reassignment policy as presented. This will take five to six years to cycle through this policy change. No preference will be given to school employees. Following a short discussion, voting for the motion with a modification to include "a two (2) year procedure," Willis, Jackson, Paul and Marks. Voting against, Cole.

The District asserts that the "two-year transfer policy applies to middle schools" only and "is valid and serves a legitimate government interest." Regarding this policy, Dr. Snowden, the District's superintendent, testified as follows:

Well, there were two major reasons for the change in the middle school zones. Number one, trying to maintain the approximate racial balance between majority and minority students had gotten skewed, and we needed to address that issue. But even a bigger issue was the fact that Trent Lott Middle School was not receiving federal funds for a Title 1 program, because you have to have 35 percent low socio-economic level, and because of the several differences in the population, the demographics, then they did not meet that criteria, so we had the students there, approximately 30 percent that qualified for that, but we could not get any services for them. So in changing those zones, it enabled both Colmer and Trent Lott to qualify for Title 1 services and receive federal funds.

While such reasons do, indeed, serve legitimate and rational governmental interests in maintaining the appropriate racial balance and in securing federal funding, the school board minutes attempting to outline this policy are extremely unclear. The circuit court addressed this vagueness in the judgment. The court stated:

If the school board is supporting its denial of the transfer on these minutes, based on the fact that no sibling transfer can be had between elementary schools, then such denial would be arbitrary and capricious, because there is no definitive written policy contained in these minutes that would support such a denial, and the school board can only adopt policies and speak through its minutes. From the record, it appears that in the past transfers within schools within the district have been liberally allowed.

We agree that the denial of Gentry's transfer cannot be based on the alleged "middle-school" transfer policy since there is no written record outlining its substance. Such a denial based on this vague policy would clearly be arbitrary and capricious.

### Whether Gentry Barton may be transferred to Beach Elementary under the "reassignment" provision of the District's transfer policy.

¶20. The Bartons assert that another provision found in the District's student assignment, transfer, and reassignment policy allows for Gentry's transfer from Eastlawn to Beach Elementary. That provision reads as follows: "Students assigned to schools which are not nearest to their homes will be reassigned to schools closer to their homes by the administration at the end of the school year or sooner, if educationally sound, or at the request of their parents, taking into consideration the preceding guidelines."

¶21. The Bartons assert that since Gentry has completed his first year of school, there is no longer any reason for the District to deny his transfer. This particular provision of the policy was not relevant at the circuit court or school board hearings since Gentry had not completed kindergarten. The school year ended in June, 2000. Thus, the Bartons assert, Gentry's transfer request now falls under this provision.

¶22. It is undisputed that the Barton home is closer to Beach than to Eastlawn. It is also undisputed that Gentry has completed his first year of school and that the school year has ended. Gentry's transfer would, thus, comply with the noted policy provision. The District's continued denial of Gentry's transfer when space becomes available would be arbitrary and capricious in light of this policy provision.

### CONCLUSION

¶23. The only valid reason the District offered as to why Gentry Barton has not been transferred to Beach Elementary was the lack of available space. The circuit court correctly found that such a reason for denial of a transfer request was based on substantial evidence and was not arbitrary and capricious. We agree with the circuit court that Gentry's transfer request should be granted as soon as a slot becomes available. The District's refusal of the request under those circumstances would be arbitrary and capricious. For the foregoing reasons, we affirm the judgment of the circuit court.

¶24. **AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., COBB AND DIAZ, JJ., CONCUR. SMITH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J. AND WALLER, J. EASLEY, J., NOT PARTICIPATING.**

**SMITH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶25. I agree with the majority insofar as it holds that the transfer denial was based on substantial evidence and was not arbitrary or capricious. It is apparent that the failure to transfer Gentry Barton was due to an unavailable opening at Beach Elementary.

¶26. On the other hand, I disagree with the majority's conclusion that the circuit judge was correct in holding that Barton's transfer request should be granted as soon as a slot becomes available. The circuit judge exceeded his authority. For this reason, I respectfully dissent.

¶27. As the circuit court correctly stated, its scope of review was limited to deciding whether the action of the school board was arbitrary or capricious, or was not supported by substantial evidence. *County Bd of Educ. v. Smith*, 239 Miss. 53,63, 121 So.2d 139, 144 (1960). Similarly, the circuit court noted that it should not substitute its own judgment for that of the agency because it is not the function of the circuit court to determine whether the action was right or wrong, wise or unwise, advisable or unadvisable. The court should look to see if there was substantial evidence to sustain the legal action of the legislative agency. *County Bd. of Educ. v. Parents & Custodians of Students at Rienzi Sch. Attendance Ctr.*, 251 Miss. 195, 168 So.2d 814 (1964). It is apparent that the circuit judge applied the appropriate standard. However, after correctly reciting the standard, he went one step further. The judge did not stop after finding that the school district had not acted arbitrarily or capriciously. He continued by holding that the school district must transfer Barton as soon as a student slot became available. As earlier stated, the circuit court should not substitute its own judgment for that of the agency. In my opinion, the circuit judge did just that. Since the school district was not found to have acted arbitrarily or capriciously, the agency decision should be upheld.

**BANKS, P.J., AND WALLER, J., JOIN THIS OPINION.**